# <u>Exhibit A</u>

## Lease and Amendment

# LEASE

## BETWEEN

### 1065 WISC LLC, a Delaware limited liability company

## AND

### THE CANDLE BAR STORES, LLC,
### a Tennessee limited liability company
### d/b/a "The Candle Bar"

**TABLE OF CONTENTS**
**TO**
**LEASE**

ARTICLE 1
    PARTIES ................................................................................................. 1

ARTICLE 2
    TERMS, CONDITIONS AND DEFINITIONS ........................................... 1

ARTICLE 3
    IMPORTANT DATES AND ADDITIONAL DEFINITIONS ........................ 2

ARTICLE 4
    POSSESSION ....................................................................................... 4

ARTICLE 5
    USE ....................................................................................................... 4

ARTICLE 6
    TERM .................................................................................................... 5

ARTICLE 7
    RENT .................................................................................................... 5

ARTICLE 8
    TAXES .................................................................................................. 6

ARTICLE 9
    INSURANCE .......................................................................................... 6

ARTICLE 10
    COMMON AREA MAINTENANCE ......................................................... 9

ARTICLE 11
    INTENTIONALLY DELETED ................................................................ 10

ARTICLE 12
    DEPOSITS ........................................................................................... 11

ARTICLE 13
    COVENANTS OF TENANT ................................................................. 11

ARTICLE 14
    TENANT WORK .................................................................................. 11

ARTICLE 15
    REPAIRS ............................................................................................. 12

ARTICLE 16
    SURRENDER OF PREMISES; HOLDING OVER ............................... 13

ARTICLE 17
    UTILITIES AND TRASH ...................................................................... 14

ARTICLE 18
    SIGNS ................................................................................................. 15

**ARTICLE 19**
    **RIGHTS OF LANDLORD** ........................................................................15

**ARTICLE 20**
    **DAMAGE TO PREMISES** .....................................................................17

**ARTICLE 21**
    **CONDEMNATION** ................................................................................18

**ARTICLE 22**
    **BANKRUPTCY** ....................................................................................18

**ARTICLE 23**
    **ASSIGNMENT AND SUBLET** ............................................................19

**ARTICLE 24**
    **SUBORDINATION; ESTOPPEL** ........................................................22

**ARTICLE 25**
    **RECORDATION** ...................................................................................23

**ARTICLE 26**
    **DEFAULT** ............................................................................................24

**ARTICLE 27**
    **LEGAL PROCEEDINGS AND NOTICES** ..........................................26

**ARTICLE 28**
    **SUCCESSORS AND ASSIGNS** .......................................................27

**ARTICLE 29**
    **BROKERS AND AGENTS** ..................................................................27

**ARTICLE 30**
    **INTENTIONALLLY OMITTED** ...........................................................27

**ARTICLE 31**
    **ENVIRONMENTAL COVENANTS AND PROHIBITED MATERIALS** .....27

**ARTICLE 32**
    **APPROVALS** .......................................................................................28

**ARTICLE 33**
    **LIABILITY OF LANDLORD** ................................................................28

**ARTICLE 34**
    **ENTIRE AGREEMENT AND MISCELLANEOUS** ..............................29

**ARTICLE 35**
    **SPECIAL PROVISIONS** .....................................................................31

## ARTICLE 1
### PARTIES

**101.**     THIS LEASE (this "Lease"), made as of this 7th day of January, 2018, by and between 1065 WISC LLC, a Delaware limited liability company ("Landlord") and The CANDLE BAR STORES, LLC, a Tennessee limited liability company, d/b/a "The Candle Bar" ("Tenant").

## ARTICLE 2
### TERMS, CONDITIONS AND DEFINITIONS

**201(a).   Premises**:  Landlord leases to Tenant and Tenant leases from Landlord, for the Term (as defined) and upon the terms and conditions set forth in this Lease, the Premises, which for all purposes of this Lease shall be deemed to contain 2,111 square feet of gross leasable area, more or less, located on the second (2nd) floor of the building located at 1065 Wisconsin Avenue NW, Washington, DC 2007 (the "Building"), in the approximate location depicted on **Exhibit A**, including use of an entrance and vestibule at street level,

**201(b).   Term**:  The Term of this Lease shall begin on the Lease Commencement Date and continue for a period of seven (7) Lease Years after the Rent Commencement Date (as defined in Article 3), unless sooner terminated pursuant to the provisions of this Lease.  The Term may be extended as provided for in Exhibit G.

**201(c).   Permitted Use**:  A candle making store, along with the retail sale of candles, alcoholic beverages and other incidental items typically sold in stores operating under Tenant's Trade Name, subject to all applicable laws and the restrictions and prohibited uses set forth in **Exhibit E**, and for no other purpose.

**201(d).   Minimum Rent**:

|              | Annually     | Monthly     |
|--------------|--------------|-------------|
| Lease Year 1 | $80,000.04   | $6,666.67   |
| Lease Year 2 | $81,999.96   | $6,833.33   |
| Lease Year 3 | $84,050.04   | $7,004.17   |
| Lease Year 4 | $86,151.24   | $7,179.27   |
| Lease Year 5 | $88,305.00   | $7,358.75   |
| Lease Year 6 | $90,512.64   | $7,542.72   |
| Lease Year 7 | $92,775.48   | $7,731.29   |

**201(e).   Intentionally Deleted.**

**201(f).   Security Deposit**:  $10,486.73, payable upon execution of this Lease.

**201(g).   Rent Deposit**:  $10,486.73, payable upon execution of this Lease, to be applied to the first installment(s) of Rent.

**201(h).   Monthly Tax Charge**:  $3,242.66, subject to adjustment pursuant to this Lease.

**201(i).   Monthly Common Area Maintenance Charge**:  $490.41, subject to adjustment pursuant to this Lease.

**201(j).   Intentionally Deleted.**

**201(k).   Monthly Insurance Charge**:  $86.99, subject to adjustment pursuant to this Lease.

**201(l).   Estimated Delivery Date**: February 1, 2019.

**201(m).   Fixturing Period**:  One Hundred Twenty (120) calendar days after the date the "Permits" (as defined in **Exhibit G**, Paragraph 2) are issued.  The "date the Permits are issued" shall mean the earlier of the date (x) the Permits are available for Tenant to pick up (or obtain in electronic form) from the applicable governmental agency, or (y) the governmental agency sends the Permits to Tenant via mail or other delivery service.

**201(n).   Landlord's Agent**:  Cascade Realty Partners, LLC

**201(o).   Tenant's Trade Name**:  The Candle Bar

**201(p).   Minimum Store Hours**:
Monday through Sunday 12:00 p.m. to 8:00 p.m., with the option to be closed for business one (1) day per week.

1

**201(q).   Landlord's Address for Notices and Rent Payments**:
1065 Wisc LLC
c/o Cascade Realty Partners, LLC
7600 Wisconsin Avenue, Suite 650
Bethesda, Maryland 20814

**201(r).   Tenant's Address**:
2934 Sidco Drive, Suite 140
Nashville, TN  37204

**201(s).   Broker(s)**:   Rappaport, representing the Tenant, and S. CBRE, representing the Landlord.

**201(t).   Certificate of Occupancy**:  Within ten (10) days after the date that Tenant opens for business in the Premises, Tenant shall provide Landlord with a copy of a Certificate of Occupancy and/or such other document as may be required by the applicable governmental agency in order for Tenant to operate in the Premises.

<u>**EXHIBITS**</u>

Attached to this Lease and made a part hereof are the following exhibits:

| | |
|---|---|
| **EXHIBIT A**: | Premises |
| **EXHIBIT B**: | Rules and Regulations |
| **EXHIBIT C**: | Construction |
| **EXHIBIT C-1**: | Allowance |
| **EXHIBIT D**: | Intentionally Deleted |
| **EXHIBIT E**: | Prohibited Uses |
| **EXHIBIT F**: | Guaranty |
| **EXHIBIT G**: | Rider of Additional Lease Provisions |

<u>**ARTICLE 3**</u>
**IMPORTANT DATES AND ADDITIONAL DEFINITIONS**

**301.    Additional Rent.**  All payments of money from Tenant to Landlord required to be paid under this Lease other than Minimum Rent.  Unless otherwise provided for in this Lease, any Additional Rent shall be due with the next installment of Minimum Rent coming due after Landlord sends a bill or notice regarding the Additional Rent to Tenant.

**302.    Calendar Year.**  As used herein, "Calendar Year" or "calendar year" shall mean a period commencing on January 1 and ending on December 31.

**303.    Common Area.**  Any existing or future improvements, equipment, areas and/or spaces (as the same may be enlarged, reduced, replaced, increased, removed or otherwise altered by Landlord from time to time) for the non-exclusive, common and joint use or benefit of Landlord, Landlord's invitees, Tenant and other tenants, occupants and users of the Building.  The Common Area may include (not to be deemed a representation of their availability) without limitation loading and service areas, stairs and other similar areas and improvements.

**304.    Date of Lease.**  The date set forth in Section 101 above.  On such date, all rights and obligations of the parties under this Lease shall commence.

**305.    Day or "day".**  A calendar day, unless otherwise expressly set forth to the contrary in a particular provision of this Lease.

**306.    Expiration Date.**  The last day of the Term.

**307.    Fixturing Period.**  The period specified in Section 201(m) within which Tenant is obligated to fixture and equip the Premises in accordance with Tenant's Plans as approved in advance by Landlord.

**308.    Landlord Parties.**  Landlord, its agents, contractors and employees.

**309.     Landlord's Indemnitees.**  Landlord and Landlord's lessors, its partners, officers, shareholders, members, trustees, principals, agents, property managers, employees, contractors and any Mortgagee(s).

**310.     Landlord's Work.**  The work, if any, listed in Section I of **Exhibit C**, for performance by Landlord.

**311.     Laws.**  All present and future federal, state and local common law, statutes (including without limitation The Americans with Disabilities Act), as amended from time to time, rules, codes, ordinances and regulations, and all directions, requirements, rulings and orders of all federal, state and local courts and other governmental (and quasi-governmental) agencies and authorities including, without limitation, those of any health officer, fire marshal, building inspector or other officials, of the governmental agencies having jurisdiction.

**312.     Lease Commencement Date.**  The date (a) Tenant receives Notice of Possession, or (b) on which Landlord would have tendered possession of the Premises to Tenant with Landlord's Work substantially completed but for delays caused in whole or in part by Tenant, as such date is set forth in a notice from Landlord to Tenant.  On such date, the utilities shall become Tenant's sole responsibility, and Tenant shall maintain the insurance described in Section 902.

**313.     Lease Interest Rate.**  An annual rate of interest equal to the lesser of (i) the maximum rate of interest permitted in the state in which the Premises is located, or (ii) twelve percent (12%).  Interest shall be calculated on the basis of a 365-day year, actual days elapsed, from the date any cost or expense is incurred until the amount owing (including all interest owing thereon) is fully paid.

**314.     Lease Year.**  The first Lease Year shall begin on the Rent Commencement Date and shall end twelve (12) full calendar months thereafter.  Thereafter, each Lease Year shall commence on the day following the expiration of the preceding Lease Year and shall end at the expiration of twelve (12) calendar months thereafter or, if earlier, the Expiration Date.

**315.     Intentionally Deleted.**

**316.     Mortgage.**  Any mortgage, deed of trust, security interest or title retention interest affecting the Building or any portion thereof.

**317.     Mortgagee.**  The holder of any note or obligation secured by a Mortgage, including, without limitation, lessors under ground leases, sale-leaseback arrangements and lease-leaseback arrangements.

**318.     Notice of Possession.**  Landlord's notice to Tenant that the Premises is ready for Tenant's use and that Landlord has substantially completed Landlord's Work.

**319.     Person.**  An individual, firm, partnership, association, corporation, limited liability company, partnership, or any other entity.

**320.     Pro Rata Share.**  Tenant's Pro Rata Share shall be a fraction, the numerator of which shall be the gross leasable area of the Premises (as set forth in Section 201(a)) and the denominator of which shall be the gross leasable area of the Building.  Space contained in any basement area or mezzanine area of the Building, such as storage space located in a mezzanine of a space, shall not be included in computing gross leasable area of the Building, but basement area or mezzanine area used for retail sales shall be included.

**321.     Rent.**  All amounts that Tenant is obligated to pay under this Lease, including, without limitation, Additional Rent, Minimum Rent, Monthly Tax Charges, Monthly Insurance Charges, and Monthly Common Area Maintenance Charge.

**322.     Rent Commencement Date.**  The next day after the last day of the Fixturing Period shall be the commencement date of Tenant's obligations to pay Rent and submit statements of Gross Sales pursuant to Article 7 below.

**323.     Tax Year.**  A twelve (12) month period coinciding with the period designated as the tax year by the taxing authorities having jurisdiction over the Building.

**324.     Tenant's Indemnitees.**  Tenant and Tenant's partners, officers, shareholders, members, trustees, principals, agents, employees and contractors.

**325.     Tenant Parties.**  Tenant, its agents, contractors, and employees, and while in the Premises, invitees.

**326.     Tenant's Work.**  The work to be performed by Tenant, at Tenant's sole cost, in accordance with **Exhibit C** and the Tenant's Plans.

**327.     Term.**  As used in this Lease "Term" or "term" shall include the Term described in Section 201(b), and where applicable any extension of the Term.  As used in this Lease "Extension Term" or "extension term" means any option period or other permitted extension of the Term.

**ARTICLE 4**
**POSSESSION**

**401.     Condition of the Premises.**  Landlord shall complete Landlord's Work.  Except for completion of such Landlord's Work, Tenant accepts the Premises in "as is" condition.  Tenant expressly acknowledges that except as expressly provided for in this Lease, Landlord makes no representations or warranties regarding the Premises or the suitability of the Premises for Tenant's business.

**402.     Commencement of Tenant's Work.**  Upon the Lease Commencement Date, Tenant shall with due diligence proceed to install such fixtures and equipment and to perform all of Tenant's Work as shall be required pursuant to Tenant's Plans (as defined in Section 1401 hereof), as approved in writing by Landlord.  Tenant's Work shall be in compliance with Part II of **Exhibit C**.  Tenant agrees that it will use all new fixtures in the Premises.

**403.     Failure to Open for Business.**  If Tenant does not open the Premises for the conduct of its business within ninety (90) days following the Rent Commencement Date (subject to Force Majeure), then in order to compensate Landlord for its loss, Landlord shall have the option of collecting from Tenant an amount equal to all Rent due under this Lease, plus an additional amount (which shall constitute Additional Rent under this Lease) of one hundred dollars ($100.00) **per day** for each and every day from the Rent Commencement Date until the date Tenant opens for business from the Premises in accordance with the terms of this Lease.

**404.     Delivery Failure.**  If Tenant is unable to obtain possession of the Premises on or before the Estimated Delivery Date due to any act or condition beyond Landlord's reasonable control (including, but not limited to, the failure of any existing tenant to vacate the Premises (or any part thereof)), Landlord shall not be liable for any loss, damage or cost resulting therefrom, and this Lease shall not be affected thereby in any way.  If the Premises are not available for Tenant's possession within ninety (90) days after the Estimated Delivery Date, Landlord or Tenant may terminate this Lease by giving written notice thereof to the other party at any time after the lapse of said ninety (90) day period, provided, however, if Tenant elects to terminate and Landlord delivers Notice of Possession to Tenant prior to the expiration of thirty (30) days from receipt of Tenant's notice to terminate, this Lease shall continue in full force and effect as if Tenant's termination notice had never been given.

**405.     Quiet Enjoyment.**  Landlord covenants and agrees that so long as Tenant has not committed an Event of Default, Tenant's peaceful and quiet possession of the Premises during the Term shall not be disturbed by Landlord or by anyone claiming by, through or under Landlord, subject to the terms and conditions of this Lease, any Mortgage, and all matters of record, or any other agreements to which this Lease is or may hereafter be subordinated.

**ARTICLE 5**
**USE**

**501.     Permitted Use.**  Tenant shall use and occupy the Premises during the Term solely for the Permitted Use, only under the Tenant's Trade Name and only in accordance with the uses permitted under applicable zoning and other applicable governmental regulations and requirements and for no other purpose or under any other name, unless otherwise approved in advance in writing by Landlord, such consent not to be unreasonably withheld, conditioned or delayed.  It is agreed that the Permitted Use specified in Section 201 has been, and is, a material inducement to Landlord in entering into this Lease with Tenant, and that Landlord would not enter into this Lease without this inducement.  Furthermore, and without limiting the generality of the preceding sentence, Tenant shall not use the Premises for any of the purposes prohibited in **Exhibit E**.

**502.     No Continuous Use.**  Aside from Tenant's initial duty to open for business as set forth in Section 403 fully staffed and merchandised, Tenant shall have no duty to operate for business.  However, as long as Tenant is doing business in the Premises, Tenant shall remain open for business at least during the Minimum Store Hours set forth in Section 201.  Tenant shall conduct no distress sales, such as "going-out-of-business", "lost-our-lease", fire or bankruptcy sales on the Premises or elsewhere in the Building.  In the event Tenant shall have ceased doing business in the Premises for more than ninety (90) consecutive days (in the absence of a casualty or remodeling), Landlord shall have the right to terminate this Lease at any time Tenant remains closed upon notice to Tenant.

**503.     Storage and Office Space.**  Tenant shall store or stock in the Premises only such goods, wares and merchandise as Tenant intends to offer for sale at retail at, in, from, or upon the Premises.  This shall not preclude occasional emergency

4

transfers of merchandise to the other stores of Tenant, if any.  Tenant shall use for office, clerical or other non-selling purposes only such space in the Premises as is from time to time reasonably required for Tenant's business therein, and Tenant shall not perform any office or clerical function in the Premises for any store located elsewhere.

**ARTICLE 6**
**TERM**

**601.**    **Lease Term.**  The Term of this Lease shall commence on the Lease Commencement Date and shall end at midnight on the Expiration Date without the necessity of any notice from either party to the other to terminate the same.  Tenant hereby waives notice to vacate the Premises and agrees that Landlord shall be entitled to the benefit of all provisions of law respecting summary recovery of possession from a tenant holding over to the same extent as if any statutory notice had been given.

**602.**    **Survival of Obligations.**  All obligations to perform any action and/or pay any sums due or to become due to either party from the other under this Lease shall survive the expiration or earlier termination of this Lease and remain continuing obligations until performed and/or paid.  All indemnity obligations under this Lease shall likewise survive the expiration or earlier termination of this Lease.

**ARTICLE 7**
**RENT**

**701.**    **Payment of Rent.**  Tenant covenants to pay Landlord at the address for Rent Payments set forth in Section 201(q), the Minimum Rent in the sums set forth in Section 201(d) above and in **Exhibit G**, Paragraph 1, and the Monthly Tax Charge, Monthly Common Area Maintenance Charge and Monthly Insurance Charge, in advance on the first day of each calendar month during the Term, without offset, deduction, abatement, counterclaim, recoupment or notice or demand therefor, except as expressly set forth herein.  Rent checks shall be made payable to Landlord, or to such other entity directed by Landlord.  Rent shall commence to accrue on the Rent Commencement Date.  The first full monthly payment of Rent shall be paid as the Rent Deposit upon execution of this Lease.  The next payment of Rent shall be due on the first day of the first full month of the Term for a pro-rated amount of the Minimum Rent and Additional Rent applicable to the period from the Rent Commencement Date to the last day of the month in which the Rent Commencement Date occurred; provided, however, if the Rent Commencement Date occurs on the first day of a month, then Tenant's next payment of Rent shall be due and payable on the first (1st) day of the next full calendar month thereafter.  For the full calendar year, Lease Year or Tax Year in which the Term commences and terminates, Tenant's liability for Tenant's Pro Rata Share of Taxes, Common Area Maintenance Charges and Monthly Insurance Charges shall be subject to a pro rata adjustment based on the number of days of said calendar year, Lease Year or Tax Year, as applicable, during which the Term of this Lease is in effect.

**702.**    **Intentionally Deleted.**

**703.**    **Intentionally Deleted.**

**704.**    **Intentionally Deleted.**

**705.**    **Intentionally Deleted.**

**706.**    **Intentionally Deleted.**

**707.**    **Intentionally Deleted.**

**708.**    **Intentionally Deleted.**

**709.**    **Intentionally Deleted.**

**710.**    **Manner of Payment.**  Tenant shall promptly pay, to the entity and at the location directed by Landlord, all Rent and other payments called for herein when and as the same shall become due and payable, in lawful money of the United States, without offset, deduction, recoupment, or notice or demand therefor.  Rent checks shall be made payable and sent to Landlord's address, as set forth in Section 201, or as otherwise designated by Landlord in writing.  Any check received by Landlord shall be deemed received subject to collection.  Any payments of Rent by Tenant or acceptance by Landlord of a lesser amount than shall be due from Tenant to Landlord shall be treated as a payment on account and may be applied in Landlord's sole and absolute discretion.  The acceptance by Landlord of payment of a lesser amount with or without an endorsement or statement thereon, or upon any communication accompanying such payment, that such lesser amount is payment in full, shall be given no effect, and shall not constitute an accord and satisfaction or settlement, and Landlord may accept and apply such payment without prejudice to any rights or remedies which Landlord may have.  If on more than one (1)

5

occasion during the Term any check for Rent shall not be honored by the bank on which it is drawn, Landlord may thereafter require that all future payments from Tenant be made by certified check, cashiers' check, or immediate funds.  In addition, Landlord may assess a One Hundred Dollar ($100.00) charge for any check from Tenant returned to Landlord for insufficient funds.

**711.    Late Payment.**  If any payment of Rent is not received by Landlord within five (5) days after its due date, Tenant shall be immediately obligated to pay, as Additional Rent, a late charge equal to ten percent (10%) of the amount due, to compensate Landlord for the additional administrative expense and inconvenience occasioned thereby, which late charge shall be due within thirty (30) days after written demand therefor by Landlord.  Notwithstanding the foregoing, Landlord agrees to waive the late charge on the first late payment in any period of twelve (12) consecutive months, as long as Tenant pays the amount due within five (5) business days following receipt of notice that the same was past due.

**ARTICLE 8**
**TAXES**

**801.    Tax Definition.**  Tenant covenants to pay Landlord, as Additional Rent, Tenant's Pro Rata Share of all Taxes.  As used in this Lease, "Taxes" means and includes, without limitation, ad valorem taxes, sewer taxes, school taxes, real estate taxes, special and general assessments; water and sewer rents and charges; taxes on other areas made available for the common use or benefit of tenants of the Building; that are either a lien on the Building or which are charged, levied or assessed on, or imposed in connection with, the use, occupancy or possession of the Building, and/or which appear as a charge on a tax bill given to Landlord by any official taxing authority;  taxes measured by the rents receivable by Landlord from the Building; occupancy taxes; and, if Landlord contests Taxes or seeks a reduction of the same, any and all reasonable costs, expenses and fees (including attorneys' and other experts' fees) incurred by Landlord in reviewing, initiating, appealing, contesting and/or negotiating Taxes with the public authorities (regardless of the outcome) (provided any refund obtained  for any period where Tenant has paid Taxes shall be credited back to Tenant proportionately.  If any governmental authority or unit under any present or future law effective at any time during the Term hereof shall in any manner levy a sales or similar tax on rents payable under this Lease or rents accruing from use of the Building, such tax shall be paid by Tenant, either directly or through Landlord.  Tenant shall not be required to pay (i) any municipal, county, state or federal income tax, (ii) any inheritance, estate, succession, transfer, franchise, excise, corporation, net income or profit tax or capital levy imposed upon Landlord, (iii) any special assessments which are levied or assessed by a special assessment district which is formed, directly or indirectly, by Landlord and/or others for the purpose of constructing or acquiring on-site or off-site improvements to or for the Building, or any portion thereof; or (iv) provided Tenant has timely paid Tenant's Pro Rata Share of Taxes to Landlord, penalties or interest for late or partial payment.  A copy of an official tax bill with respect to a governmental tax or assessment shall be conclusive evidence of the amount of a Tax.

**802.    Tax Payment.**  Tenant covenants to pay Landlord, as Additional Rent, Tenant's Pro Rata Share of Taxes to Landlord in the form of the Monthly Tax Charge, at the same time as Minimum Rent is payable hereunder, without offset, deduction, recoupment, counterclaim, abatement, notice or demand, except as expressly set forth herein.  The Monthly Tax Charge set forth in Section 201, annualized, shall be the initial estimated charge payable by Tenant for Taxes.  Within one hundred twenty (120) days following receipt of all tax bills and assessment bills attributable to any Tax Year during the Term hereof, Landlord shall furnish Tenant with a written statement of the actual amount of Tenant's Pro Rata Share of Taxes for such year.  If the total amount paid by Tenant is different than the actual amount owed, there shall be an appropriate adjustment, with payment being made by the applicable party to the other within fifteen (15) days after receipt of the statement.  Landlord may provide any refund in the form of a credit against the next installment or installments of Taxes due from Tenant to Landlord hereunder, or by refund if there is insufficient time remaining in the Term to apply such credit, provided, however, if an Event of Default exists then Landlord may apply any overpayment to outstanding amounts due from Tenant to Landlord under this Lease.  If at any time the Taxes increase, Landlord may increase the Monthly Tax Charge accordingly to reflect Tenant's Pro Rata Share of such increase.  Landlord's agreement to provide a statement as provided for in this Section is not a condition to the Tenant's obligation to make payment of the Tenant's Pro Rata Share of Taxes, as long as the same is provided within the period set forth above, otherwise Tenant shall not be liable for any deficiency for in the amount paid by Tenant for the applicable period.

**ARTICLE 9**
**INSURANCE**

**901.    Landlord's Insurance.**  Landlord shall provide property, liability, and/or such other insurance coverages as Landlord, in its sole discretion, deems appropriate for the Building.  Tenant shall pay to Landlord the Monthly Insurance Charge specified in Section 201 at the same time as Minimum Rent is payable hereunder, without offset, deduction, recoupment, counterclaim, abatement, notice or demand, except as expressly set forth herein.  The Monthly Insurance Charge set forth in Section 201, annualized, shall be the initial charge payable by Tenant for Landlord's property insurance.  Landlord's cost for other insurance for the Building (including but not limited to liability insurance or any deductibles maintained by Landlord for such other insurance) shall be included as part of the Building's Common Area Maintenance Costs for which Tenant is obligated to pay its

6

Pro Rata Share pursuant to Article 10.  If the total amount paid by Tenant is different than the actual amount owed, there shall be an appropriate adjustment, with payment being made by the applicable party to the other within fifteen (15) days after receipt of the statement.  Landlord may provide any refund in the form of a credit against the next installments of Insurance due from Tenant to Landlord hereunder, or by refund if there is insufficient time remaining in the Term to apply such credit, provided, however, if an Event of Default exists then Landlord may apply any overpayment to outstanding amounts due from Tenant to Landlord under this Lease.  If at any time Landlord receives notice of an increase in the insurance costs with respect to the Building, Landlord may increase the Monthly Insurance Charge accordingly to reflect Tenant's Pro Rata Share of such increase.  Landlord's agreement to provide a statement as provided for in this Section 901 is not a condition to the Tenant's obligation to make payment of the insurance charges, as long as the same is provided within an additional one hundred eighty (180) days following the period set forth in Section 1002, otherwise Tenant shall not be liable for any deficiency for in the amount paid by Tenant for the applicable period..

Notwithstanding the foregoing, Landlord may elect, by providing notice to Tenant, to include other insurance costs for the Building in Tenant's Monthly Insurance Charge and increase the monthly amount accordingly.  In such event, such insurance costs shall not be duplicated and charged as part of Common Area Maintenance Costs.

**902.    Tenant's Insurance.**  Tenant covenants and agrees that during the Term, Tenant will carry and maintain, at its sole cost and expense, the following types of insurance in the amounts specified and in the form hereinafter provided for:

(a) **Commercial General Liability.**  Commercial general liability insurance (occurrence basis commercial general liability insurance policy including Products and Completed Operations and Premises Legal Liability, on a form that is reasonably satisfactory to Landlord) with a combined single limit for bodily injury, including death, to any person or persons, and for property damages, of not less than $1,000,000.00 per occurrence, $2,000,000.00 aggregate plus excess/umbrella liability insurance containing a per occurrence combined single limit of $1,000,000.00 aggregate, for general liability, automobile liability, contractual liability, and employers' liability.  Said insurance shall cover any and all liability of the insured with respect to said Premises, the areas adjacent to the Premises (including, but not limited to, the sidewalk and loading dock), or arising out of the maintenance, use or occupancy thereof.  All such insurance shall specifically insure the performance by Tenant of the indemnity provisions as to liability for injury to or death of persons and injury or damage to property contained in this Article 9 to the extent of perils insured under a standard commercial general liability insurance policy.  Tenant's commercial general liability insurance shall name Landlord, Landlord's Agent, Landlord's Mortgagee(s) and any other designee of Landlord, as additional insureds (using ISO Form CG 2010 (11/85), or equivalent).  The amount of such liability insurance required to be maintained by Tenant hereunder shall not be construed to limit Tenant's indemnity obligations in this Lease or other liability hereunder.

(b) **Glass.**  Tenant shall be responsible for the maintenance of all glass in or on the Premises and shall insure the risk.

(c) **Tenant Improvements.**  Insurance covering all of the items specified as "Tenant's Work," Tenant's leasehold improvements, betterments, trade fixtures, furniture, merchandise, inventory and personal property from time-to-time in, on or upon the Premises, and personal property of others in Tenant's possession, in an amount not less than the full replacement cost without deduction for depreciation from time-to-time during the Term of this Lease, providing protection against any peril included within the classification causes of loss-special form.  Any policy proceeds shall be used for the repair or replacement of the property damaged or destroyed.

(d) **Automobile Liability Insurance.**  Tenant shall also maintain business automobile liability insurance on all vehicles that Tenant owns or leases and shall carry hired and non-owned liability insurance if there are no automobiles owned by Tenant, all of which shall be subject to a minimum limit of One Million Dollars ($1,000,000.00).

(e) **Business Income Insurance.**  Business income insurance (formerly known as "business interruption insurance") in an amount equal to the annual Rent for a twelve (12) month period, although Tenant may self-insure for this coverage.

(f) **Worker's Compensation.**  Worker's Compensation insurance meeting the requirements of the state worker's compensation laws.

(g) **Contractors Insurance.**  Tenant shall require any general contractor of Tenant performing work on the Premises to carry and maintain, at no expense to Landlord: (a) commercial general liability insurance, including contractors liability coverage, contractual liability coverage, completed operations coverage, broad form property damage endorsement and contractor's protective liability coverage, providing protection with limits for each occurrence of not less than One Million Dollars ($2,000,000); and (b) workers' compensation or similar insurance in form and amounts required by any Laws.

(h) **Dram Shop.**  If dram shop liability is recognized in the state in which the Premises is located, Tenant shall maintain "dram shop" or "liquor legal liability" insurance if Tenant sells alcoholic beverages, either as an endorsement to its

7

general liability policy or as a separate policy.  Tenant shall provide Landlord with evidence of this insurance prior to selling or serving alcoholic beverage at or from the Premises.

(i) **Intentionally Deleted.**

(j) **Intentionally Deleted.**

(k) **Policy Form.**  All policies and certificates of insurance shall evidence that Tenant's insurance policies required pursuant to the provisions of this Lease (i) name Tenant as the insured; (ii) be primary insurance as to all claims thereunder and provide that any insurance carried by Landlord or any other party is excess and is non-contributing with the subject insurance coverage; (iii) provide that an act or omission of one of the insureds or additional insureds thereunder which would void or otherwise reduce coverage, shall not void or reduce coverage as to the other insureds or additional insureds; (iv) provide that such policy permits the waiver of recovery by way of subrogation against Landlord and the Landlord Indemnitees (as defined in Article 3) in connection with any loss or damage covered by such insurance policy as provided in Section 908; and (v) not contain any deductible provision in excess of Fifty Thousand Dollars ($50,000).  Executed certificates (on ACORD Form 27 and 28, as applicable, or substitute equivalents if no longer available) thereof shall be delivered to Landlord on or before the Lease Commencement Date and at least thirty (30) days prior to the expiration of any insurance policy.  All insurance carriers providing insurance required by this Section 902 must have no less than an A.M. Best's A-/VIII rating.

(l) **Failure of Tenant to Obtain.**  If certificates of insurance required pursuant to this Article 9 are not received by Landlord on or before the Lease Commencement Date, (i) Tenant shall not be permitted to perform any work on the Premises or otherwise use or occupy the Premises until such certificates are received by Landlord, and (ii) Landlord shall have no obligation to deliver the keys to the Premises to Tenant until such certificates are received by Landlord; provided, however, the Lease Commencement Date shall not be affected and the Fixturing Period shall be deemed to begin on the Lease Commencement Date.  In addition, if Tenant fails to timely provide such insurance policies or certificates (or revised policies or certificates as described in this Section 902) within ten (10) days following receipt of notice of such failure, Landlord shall have the right, (but not the obligation) without further notice to Tenant and at any time and from time to time, to acquire such insurance, and Tenant shall be obligated to pay Landlord, as Additional Rent, the amount of the premium and all sums incurred by Landlord applicable thereto within thirty (30) days following notice from Landlord.

(m) **Blanket Policy.**  Notwithstanding anything to the contrary contained within this Article 9, Tenant's obligations to carry the insurance provided for herein may be brought within the coverage of a so-called blanket policy or policies of insurance carried and maintained by Tenant; provided however, that Landlord and others mentioned above shall be named as an additional insured thereunder as their interests may appear and that the coverage afforded Landlord will not be reduced or diminished by reason of the use of such blanket policy of insurance, and provided further, that the requirements set forth herein are otherwise satisfied.

**903.   Increased Insurance Risk.**  Tenant agrees that it will not at any time during the Term of this Lease, carry any stock or goods or do anything in or about the Premises, that increases the insurance premium upon the Building.  If burning candles, or any other Tenant activity, increases the insurance premium upon the Building, Tenant agrees to pay to Landlord, within thirty (30) days after demand therefor the amount of such increase, whether.  If Tenant installs upon the Premises any electrical equipment which constitutes an overload on the electrical lines of the Premises, Tenant shall at its own expense make whatever changes are necessary to comply with the requirements of the insurance underwriters and any governmental authority having jurisdiction over the Premises, but nothing herein contained shall be deemed to constitute Landlord's consent to such overloading.

**904.   Compliance.**  Tenant shall comply with all requirements and recommendations of Landlord's insurance carriers.  In case of breach of this covenant, in addition to all other remedies of Landlord hereunder, Tenant shall pay to Landlord, as Additional Rent, any and all increases in premiums for insurance carried by Landlord where such increases were caused in any way by the occupancy or use of Tenant or the condition of the Premises.

**905.   Indemnification.**

(a) **By Tenant.**  Tenant shall indemnify, defend and hold Landlord's Indemnitees harmless from and against all liabilities, obligations, damages, judgments, penalties, claims, costs, charges and expenses, including, without limitation, reasonable architects' and attorneys' fees, which may be imposed upon, incurred by, or asserted against any of the Landlord's Indemnitees and arising, directly or indirectly, out of or in connection with the willful misconduct or negligence of the Tenant Parties.  If any action or proceeding is brought against any of the Landlord's Indemnitees by reason of any of the foregoing, Tenant's insurance company shall defend the Landlord's Indemnitees by counsel chosen by Tenant's insurance company.  If Tenant's insurance company declines to defend the Landlord's Indemnitees, Tenant shall reimburse the Landlord's Indemnitees the reasonable cost of defending such action or proceeding.  Any such cost, damage, claim, liability or expense

S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

incurred by Landlord's Indemnitees for which Tenant is obligated to reimburse Landlord's Indemnitees under this Lease shall be deemed Additional Rent due and payable within thirty (30) days after notice to Tenant that payment is due.

(b) **By Landlord.** Landlord shall indemnify, defend and hold Tenant's Indemnitees harmless from and against all liabilities, obligations, damages, judgments, penalties, claims, costs, charges and expenses, including, without limitation, reasonable architects' and attorneys' fees, which may be imposed upon, incurred by, or asserted against any of the Tenant's Indemnitees and arising, directly or indirectly, out of or in connection with the willful misconduct or negligence of the Landlord Parties. If any action or proceeding is brought against any of the Tenant's Indemnitees by reason of any of the foregoing, Landlord's insurance company shall defend the Tenant's Indemnitees by counsel chosen by Landlord's insurance company. If Landlord's insurance company declines to defend the Tenant's Indemnitees, Landlord shall reimburse the Tenant's Indemnitees the reasonable cost of defending such action or proceeding. Any such cost, damage, claim, liability or expense incurred by Tenant's Indemnitees for which Landlord is obligated to reimburse Tenant's Indemnitees under this Lease shall be due and payable within thirty (30) days after notice to Landlord that payment is due.

**906.    Intentionally Deleted.**

**907.    Sole Risk of Tenant.** It is understood and agreed that all property kept, stored or maintained in the Premises shall be so kept, stored or maintained at the sole risk of Tenant. Landlord shall not be liable to Tenant for any consequential loss or damage from any cause whatsoever.

**908.    Release and Waiver of Subrogation.** Notwithstanding anything in this Lease to the contrary, Tenant and Landlord hereby waive and release any and all rights of recovery, whether arising in contract or tort, against the other, including their employees, agents and contractors, arising during the Term for any and all loss or damage to any property located within or constituting a part of the Building (inclusive of the Premises), which loss or damage arises from the perils that could be insured against under the ISO Causes of Loss-Special Form Coverage (formerly known as "all-risk"), including any deductible thereunder (whether or not the party suffering the loss or damage actually carries such insurance, recovers under such insurance or self insures the loss or damage) or which right of recovery arises from any loss or damage that could be insured under time element insurance. This mutual waiver is in addition to any other waiver or release contained in this Lease. If there is a conflict between this Section 908 and any other provision of this Lease, this Section 908 shall control. Landlord and Tenant shall cause each property insurance policy carried by either of them insuring the Premises, the contents thereof, or the Building, to provide that the insurer waives all rights of recovery by way of subrogation or otherwise against the other party hereto in connection with any loss or damage which is covered by such policy or that such policy shall otherwise permit, and shall not be voided by the releases provided for above.

**ARTICLE 10**
**COMMON AREA MAINTENANCE**

**1001.    Operation of Common Area.** Landlord shall maintain the Common Areas in a manner consistent with similar buildings in the Georgetown submarket. Landlord grants to Tenant, in common with others, the non-exclusive license to use the Common Area subject to the terms and conditions hereof. Tenant agrees that (i) the Building is under the complete control of Landlord; and (ii) any delivery area may be designated by Landlord in its reasonable discretion. Tenant agrees that Landlord has the right (a) to enter into, modify and terminate easements and other agreements pertaining to the use and maintenance of the Building; (b) intentionally deleted; (c) to close all or any portion of the Common Area or the Building to such extent as may, in the opinion of Landlord, be necessary to maintain, repair, or replace same, or to prevent a dedication thereof or the accrual of any rights to any person or to the public therein; and (d) to do and perform such other acts in and to the Common Area or the Building as Landlord shall determine to be advisable. Landlord shall have the right, from time to time, in connection with special events produced, sponsored, presented or authorized by Landlord, to limit access to all or part of the Common Area and the Building to persons that have paid an admissions charge for access to such areas and/or are otherwise authorized by Landlord to enter such areas. Tenant acknowledges that Landlord has the right, in its sole and absolute discretion, from time to time to remove areas from common use for the exclusive use of a tenant or occupant; and pursuant to Section 1901 hereof, to erect or remove buildings or other structures and to make any changes and/or improvements in the Building, including, without limitation, expanding and/or subdividing the Building, granting licenses and easements to others, and remodeling or changing the interior and/or exterior surfaces of the Building. Tenant shall not (i) receive or ship articles of any kind outside the designated loading area for the Premises and other than during the designated loading times, nor (ii) solicit business in the Common Area or public areas of the Building, nor distribute or display any handbills or other advertising matters or devices in such Common Area or public areas. Notwithstanding the foregoing in no event shall Landlord permanently and materially impair access to or visibility of the Premises via the front entrance or visibility of Tenant's signage.

**1002.    Payment of Common Area Maintenance Charges.** Tenant covenants to pay Landlord, as Additional Rent, Tenant's Pro Rata Share of the Building's Common Area Maintenance Costs (as defined in Section 1003 below) in the form of the Monthly Common Area Maintenance Charge, at the same time as Minimum Rent is payable hereunder, without offset,

9

deduction, recoupment, counterclaim, abatement, notice or demand, except as expressly set forth herein, said payments to be based on Landlord's estimate (from time to time) of Common Area Maintenance Costs for each calendar year.  Within one hundred twenty (120) days following the close of each calendar year, Landlord shall endeavor to submit a statement to Tenant which shall set forth Landlord's estimate of the Common Area Maintenance Costs, Tenant's Pro Rata Share thereof and Tenant's Monthly Common Area Maintenance Charge.  The Monthly Common Area Maintenance Charge set forth in Section 201 shall be the initial estimated charge payable by Tenant for Common Area Maintenance Costs each month.  If the total amount paid by Tenant is different than the actual amount owed, there shall be an appropriate adjustment, with payment being made by the applicable party to the other within fifteen (15) days after receipt of the statement.  Landlord may provide any refund in the form of a credit against the next installment or installments of Common Area Maintenance Costs due from Tenant to Landlord hereunder, or by refund if there is insufficient time remaining in the Term to apply such credit, provided, however, if an Event of Default exists then Landlord may apply any overpayment to outstanding amounts due from Tenant to Landlord under this Lease.  Within fifteen (15) days from the date of billing by Landlord, Tenant shall pay its Pro Rata Share of such excess Common Area Maintenance Costs and, thereafter, Tenant's Monthly Common Area Maintenance Charge shall be increased by the appropriate amount.  Landlord's agreement to provide a statement as provided for in this Section 1002 is not a condition to the Tenant's obligation to make payment of the Common Area Maintenance Charge, as long as the same is provided within an additional one hundred eighty (180) days following the period set forth above, otherwise Tenant shall not be liable for any deficiency for in the amount paid by Tenant for the applicable period.  Upon request of Tenant, and not more than once in any twelve (12) month period, Landlord shall make its records relating to Common Area Maintenance Charges for the immediately preceding calendar year available to Tenant for review.

**1003.    Common Area Maintenance Costs.**  The term "Common Area Maintenance Costs" means any and all costs and expenses of any kind (including appropriate reserves) incurred by Landlord in managing, maintaining, repairing, replacing, inspecting, improving, operating, and insuring the Common Area, all facilities of the Building and all improvements within the Building (including any payments made by Landlord or billed to Landlord pursuant to any declaration, covenant, easement, or other agreements relating to the Building, including, without limitation, any charges under that certain Declaration of Easement recorded as Instrument #2006163097 (the "Declaration of Easement"), plus an amount equal to ten percent (10%) of the Common Area Maintenance Costs (excluding insurance premiums and utilities) as an administrative fee, which is included in the amount specified in Section 201(i) of this Lease.  In addition, Common Area Maintenance Costs may include Landlord's costs to maintain certain off-site common improvements, which may include, but not be limited to, taxes, insurance, ponds, storm water management systems, landscaping, signs, access roads, driveways, service drives and service roads and traffic islands.  Notwithstanding the foregoing, Common Area Maintenance Costs shall not include the cost of any repair or replacement item which, by standard accounting practice, is capitalized.

**1004.    Audit.**  Provided that Tenant has made all payments that have been invoiced by Landlord and is not otherwise in default under this Lease, Tenant shall have the right to audit the books, records and computations of Landlord relative to Common Area Maintenance Costs, provided: (i) Tenant gives Landlord thirty (30) days' prior written notice of its intent to audit; (ii) the audit occurs during Landlord's normal business hours and in Landlord's principal offices; (iii) Tenant may only audit said records and books once during each calendar year; (iv) Tenant may only conduct the audit of a calendar year's books and records within six (6) months after receipt of the final statement of Common Area Maintenance Costs for such calendar year; (v) the auditor must be a certified public accountant that is not compensated on a contingency basis; (vi) Tenant provides Landlord a copy of the auditor's report; and (vii) the auditor agrees to execute a confidentiality agreement with respect to such audit.  All of the information obtained through said audit as well as any compromise, settlement, or adjustment reached between Landlord and Tenant relative to the results of the audit shall be held in strict confidence by Tenant and Tenant's officers, agents and employees and shall not be revealed in any manner to any person except upon the prior written consent of Landlord, which consent may be withheld in Landlord's sole discretion, or if required pursuant to any litigation between Landlord and Tenant materially related to the facts disclosed by such audit, or if otherwise required by law.  Landlord shall have all rights allowed by law or equity if Tenant, its officers, agents or employees and/or auditor violate the terms of this provision, including, without limitation, the right to terminate this Lease or the right to terminate Tenant's future right to audit pursuant to this Section 1006.

Landlord may contest Tenant's audit results by giving Tenant written notice of protest within thirty (30) days following Landlord's receipt of the audit report. If Landlord's accountant and Tenant's accountant cannot mutually agree as to Tenant's share of Common Area Maintenance Costs due within thirty (30) days after Tenant's receipt of Landlord's notice of protest, Landlord's accountant and Tenant's accountant shall jointly choose a third independent Certified Public Accountant, whose determination shall be binding upon the parties hereto. If the accountants fail to agree upon the third accountant, the parties agree to proceed forthwith to arbitrate the issue in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The cost of the third accountant or the cost of arbitration shall be borne equally by the parties.

**<u>ARTICLE 11</u>**
**INTENTIONALLY DELETED**

**ARTICLE 12**
**DEPOSITS**

**1201.    Security and Rent Deposit.**  Tenant shall pay Landlord upon execution of this Lease the Security Deposit and Rent Deposit (collectively, the "Deposits").  The Security Deposit is to be held as collateral security for the payment of any amounts payable by Tenant under this Lease, and for the faithful performance of all other covenants, agreements and obligations of Tenant hereunder.  The Rent Deposit is to be applied to the first installment of Rent due.  In no event shall Landlord be obligated to pay interest on the Deposits.  Landlord and Tenant expressly agree that the Deposits shall be deemed to be the property of Landlord and may be commingled with Landlord's other funds.  If there is an Event of Default by Tenant under the provisions of this Lease, Landlord may, at its option, apply any sums it has received pursuant to this Section 1201 against any amounts due from Tenant, and Tenant shall be obligated to deposit with Landlord, within five (5) days after Landlord's request, the amount necessary to restore the Security Deposit to the amount specified in Section 201.  Landlord's application of any or all of the Security Deposit shall not be deemed to cure an Event of Default, shall not constitute an election of remedies, and shall be without prejudice to any other claim, right or remedy of Landlord.  The Security Deposit shall be returned to Tenant within forty-five (45) days after the later of (i) the Expiration Date or (ii) the date Tenant vacates and surrenders possession of the Premises; provided Landlord may offset any amount owed by Tenant against the Security Deposit before refunding the same.

**ARTICLE 13**
**COVENANTS OF TENANT**

**1301.    Rules and Regulations.**  The Tenant Parties shall at all times abide by and observe the rules and regulations set forth in **Exhibit B**, as the same may be modified or supplemented by Landlord from time to time, in writing with prior notice to Tenant (the "Rules and Regulations") provided that no such change shall result in a material increase of Tenant's obligations or a material decrease in Tenant's rights under this Lease.  Nothing contained in this Lease shall be construed to impose upon Landlord any duty or obligation to enforce such Rules and Regulations, or the terms, conditions or covenants contained in any other lease, as against any other tenant, and Landlord shall not be liable to Tenant for violation of the same by any other tenant, its employees, agents, contractors, invitees and customers.  The failure of Landlord to enforce any of such Rules and Regulations against Tenant and/or any other tenant in the Building shall not be deemed a waiver of any such Rules and Regulations.  If there is any inconsistency between this Lease and any future Rules and Regulations, this Lease shall govern.

**1302.    Status of Tenant.**  By virtue of its execution of this Lease, any individual executing this Lease on behalf of Tenant represents and warrants that he/she holds the title noted below his/her signature and that he/she is authorized and empowered by all necessary legal means, including corporate, partnership, or company action (as applicable), and under applicable law, to execute and deliver this Lease on behalf of such entity and to bind such entity to its obligations hereunder.  Tenant will remain qualified to do business and in good standing throughout the Term in the state in which the Premises is located to the extent required to do so by applicable Law.

**ARTICLE 14**
**TENANT WORK**

**1401.    Tenant's Plans.**  Tenant shall, at its sole cost and expense, provide Landlord, for Landlord's approval, four (4) copies of plans and specifications showing in reasonable detail any and all interior and/or exterior alterations or improvements that Tenant proposes to make to the Premises (collectively, the "Tenant's Plans"), within forty-five (45) calendar days after the Date of Lease (the "Tenant Plans Due Date").  Tenant's Plans shall be prepared such that Tenant's Work (as shown in Tenant's Plans), if completed in accordance with Tenant's Plans, shall be in accordance with all Laws.  Tenant's Plans shall also be in accordance with all requirements of all applicable governmental authorities for submissions to obtain a building permit.  Tenant shall not commence any work in the Premises prior to obtaining Landlord's written approval of Tenant's Plans.  Landlord shall respond with comments on Tenant's Plans within ten (10) days of receipt of the same.  There shall be no material changes to Tenant's Plans once Landlord approves the same, unless Landlord approves the changes in writing.

**1402.    Alterations.**  Tenant shall not alter the exterior of the Premises and shall not make any structural or non-structural alterations to the interior of the Premises without first obtaining Landlord's written approval of such alterations, which approval shall not be unreasonably withheld, conditioned or delayed as to interior non-structural alterations that do not affect any of the Building systems.  Tenant agrees that all improvements and fixtures, other than trade fixtures made or installed by it, shall immediately become the property of Landlord and shall remain upon the Premises.  Tenant shall, at its sole expense, promptly repair all damage caused by such removal.  Tenant shall not be compensated for any alteration or improvements left in the Premises at the end of the Term.  Except for installation of fixtures and other work to be performed by it in strict accordance with Tenant's Plans as approved by Landlord, Tenant shall not cut or drill into or secure any fixture, apparatus or equipment of any kind to any part of the Premises without first obtaining Landlord's written consent, which approval shall not be unreasonably withheld, conditioned or delayed.  If any alterations which Tenant causes to be constructed result in Landlord being required to make any alterations and/or improvements to other portions of the Building in order to comply with Laws, the

11

Tenant shall reimburse Landlord upon demand for all reasonable costs and expenses incurred by Landlord in making such alterations or improvements.

**1403.     Mechanic's Liens.**  Nothing contained in this Lease shall be construed as consent on the part of Landlord to subject Landlord's estate in the Premises or the Building to any lien or liability under any Law relating to liens.  Tenant shall not suffer, permit or give cause for the filing of a lien against the Premises or the Building.  If any mechanic's or materialman's lien or notice of lien shall at any time be filed against the Premises or the Building by reason of work, labor, services or materials performed or furnished to Tenant or to anyone holding the Premises through or under Tenant, Tenant shall immediately cause the same to be bonded or discharged of record.  If Tenant shall fail to cause such lien or notice of lien to be discharged or bonded within twenty (20) days after the filing thereof, then, in addition to any other rights and remedies available to Landlord at law, or in equity or under this Lease, Landlord may, but shall not be obligated to, discharge or bond off the same by paying the amount claimed to be due or posting a bond, and the amounts so paid by Landlord and all costs and expenses, including reasonable attorneys' fees, incurred by Landlord in paying, bonding off or procuring the discharge of such lien or notice of lien, shall be due and payable by Tenant to Landlord as Additional Rent within thirty (30) days of Landlord's demand therefor.

**1404.     Construction.**  All construction in the Premises shall be performed at Tenant's sole cost and expense in strict accordance with Tenant's Plans (or such other plans) as approved by Landlord.  All construction or alterations performed in the Premises by Tenant shall comply with the following: (i) such alterations shall be performed in a good and workmanlike manner and in compliance with all applicable Laws and with all other provisions of this Lease; (ii) the value of Tenant's improvements after such alterations shall not be less than the value thereof prior to such alterations; (iii) intentionally deleted; (iv) such alterations shall not prevent the continued use of the Premises as a single integrated unit; (v) such alterations shall not affect the structural integrity of the Premises; (vi) no alterations shall be undertaken until Tenant shall have procured and paid for, so far as the same may be required from time to time, all governmental approvals and permits; (vii) such alterations shall be pursued diligently and in good faith to completion; and (viii)  such alterations shall be performed in a manner so as not to interfere with the business or operations of Landlord or any other occupant of the Building.  Contractors must be licensed and carry at a minimum the insurance required in Article 9.  Tenant shall use a contractor designated by Landlord for all work related to fire protection systems.

**1405.     Modifications.**  Within thirty (30) days after completion of construction of Tenant's Work or any Tenant alterations, Tenant shall promptly deliver to Landlord Tenant's Plan showing any field modifications thereto.

**1406.     Labor Relations.**  Tenant shall conduct its labor relations and its relations with its employees and agents in such a manner as to avoid all strikes, picketing and boycotts of, on, or about the Premises and the Building.  If, during the period of initial construction of the Premises, or during any subsequent alterations, any of Tenant's employees, or agents strike, or if picket lines or boycotts or other visible activities objectionable to Landlord are established or conducted or carried out against Tenant or its employees or agents on or about the Premises or the Building, Tenant shall immediately close the Premises to the public and remove all employees therefrom until the dispute giving rise to such strike, picket line, boycott, or objectionable activity has been settled to Landlord's reasonable satisfaction.

**ARTICLE 15**
**REPAIRS**

**1501.     Tenant Damage.**  Subject to Section 908, Tenant shall repair promptly at its sole expense, or at Landlord's discretion reimburse Landlord for repairs resulting from, any damage to the Premises or any other improvement within the Building caused by the Tenant Parties.  Tenant shall be directly responsible to other tenants or occupants of the Building for any claim of such tenant or occupant, caused by the use of the Premises by the Tenant Parties.

**1502.     Repairs.**

        (a)  **By Tenant.**  Tenant shall be solely responsible for keeping the interior, non-structural portions of the Premises in good condition and repair (including replacement) from the Lease Commencement Date until the Expiration Date (or such later date as Tenant actually vacates the Premises), including, but not limited to, all required and necessary repairs to and replacements of the doors, door openers, door fixtures, windows, window frames and moldings, glass, floor, interior walls (including, but not limited to, party walls), wall coverings, ceiling, mechanical systems and equipment, electrical systems and equipment, plumbing and sewage equipment, systems, facilities and lines within the Premises, including free flow to the main sewer line, and heating, ventilating and air-conditioning systems and equipment ("HVAC"), fixtures, utility meters, fire extinguishers, together with any systems and equipment exclusively serving the Premises (whether or not located within the Premises).  Tenant shall not cause the roof of the Premises to be penetrated without first obtaining Landlord's written consent, and, upon obtaining such consent, Tenant agrees that any such work shall be performed by Landlord's roofing contractor at Tenant's sole expense.  Tenant agrees that any and all repairs to the sprinkler system shall be performed by Landlord at the sole cost of Tenant.

12

(b)    **By Landlord**.  Landlord shall, subject to reimbursement as part of Common Area Maintenance Charges but subject to the exclusion set forth in the last sentence of Section 1003, at Landlord's expense keep the structural portions, including without limitation the foundation, the exterior walls (except store fronts, plate glass windows, doors, door closure devices, window and door frames, molding, locks and hardware), utilities to the exterior of the Premises, the main sprinkler line to the exterior of the Premises and roof of the Building containing the Premises in good condition and repair.

**1503.    Continuing Maintenance Obligations.**  Tenant, at Tenant's sole expense, shall initiate and carry out a program of regular maintenance and repair of the Premises and shall keep and maintain the Premises in a clean, safe, and sanitary condition in accordance with all Laws (to the extent the same relate to Tenant's maintenance items, it being understood that Landlord shall be responsible for the items that are Landlord responsibility above)  and of the requirements of any insurance underwriters, inspection bureaus or a similar agency designated by Landlord, including, without limitation, (i) the painting or refinishing of all areas of the interior and maintaining or replacing of all trade fixtures and equipment, ceiling tile, flooring and other items of display used in the conduct of Tenant's business, so as to impede, to the extent reasonably possible, deterioration by ordinary wear and tear and to keep the same in attractive condition throughout the Term and (ii) obtaining and maintaining, at Tenant's sole cost, service contracts with reputable, licensed mechanical contractors to carry out a program of regular maintenance and repair of the HVAC and, if Tenant is required to have a grease trap, the grease trap.  From time to time, within ten (10) days of Landlord's request, Tenant shall provide copies of such contracts to Landlord.  If Tenant fails to timely provide copies of such contracts pursuant to the immediately preceding sentence, then in addition to all other remedies available to Landlord at law, in equity, and/or pursuant to this Lease, Landlord  may, at its option, perform the regular maintenance and repair of the HVAC (and, if applicable, grease trap) without prior notice or liability to Tenant for any loss or damage which may result to Tenant's business by reason of such maintenance and/or repair, in which event Tenant shall pay Landlord, within thirty (30) days of demand therefor, the reasonable cost of such maintenance and repairs.  All Tenant contractors performing alterations, replacements, or repairs that are required or permitted by this Lease shall be subject to Landlord's prior written approval, which approval shall not be unreasonably withheld.

If Landlord elects, Landlord may perform routine inspections and make repairs to systems and equipment serving the Premises, such as HVAC, fire protection and sprinkler systems equipment.  Tenant's allocated share of the foregoing costs may, at Landlord's discretion, be (i) included as part of Common Area Maintenance Costs, or (ii) billed to Tenant as Additional Rent, payable within fifteen (15) days after Tenant's receipt of such bill.  Tenant's "allocated share" for purposes of this Section 1503 shall be such charges multiplied by a fraction, the numerator of which shall be the gross leasable area of the Premises, and the denominator of which shall be the total gross leasable area of the premises in the Building which such systems or equipment serves and which were inspected, serviced or repaired, as applicable (including the Premises).

**1504.    Failure to Make Repairs.**  If any repairs and/or replacements required to be made by Tenant hereunder are not commenced within ten (10) days after written notice thereof by Landlord to Tenant and diligently pursued to completion thereafter, such failure shall constitute an Event of Default under this Lease, and Landlord may, at its option, make any or all such repairs and/or replacements without further notice or liability to Tenant for any loss or damage which may result to Tenant's business by reason of such repairs and/or replacements.  As set forth in Sections 1901(a) and 2604, Landlord may make repairs and/or replacements without notice to Tenant if necessary in the event of an emergency.  If Landlord makes any of the foregoing repairs and/or replacements, Tenant shall pay Landlord, within thirty (30) days of demand therefor, the reasonable cost of such repairs and/or replacements.

## ARTICLE 16
## SURRENDER OF PREMISES; HOLDING OVER

**1601.    Surrender.**  Tenant, on the Expiration Date, shall peaceably surrender to Landlord the Premises in broom-clean condition and in good repair (ordinary wear and tear excepted), and shall return to Landlord any and all keys (including, without limitation, access cards) furnished to, or otherwise procured by, Tenant relating in any way to the Premises or the Building.  Tenant hereby waives any and all notices to vacate.  Subject to Section 1602, Tenant shall remove all of its personal property and removable trade fixtures and equipment, as well as its signs and identification marks (collectively "Personal Property") from the Premises at or before the end of the Term.  Tenant agrees to repair all damage caused by such removal.  In the event Tenant does not make any repairs as required by this Article 16, Tenant shall be liable for and agrees to pay Landlord's costs and expenses in making such repairs.  No act or thing done by the Landlord Parties during the Term shall be deemed an acceptance of a surrender of the Premises and no agreement to accept such surrender shall be valid unless in writing signed by Landlord.  No employee of Landlord or Landlord's agents shall have any power to accept the keys of the Premises prior to the termination of this Lease, and the delivery of keys to any such agent or employee shall not operate as a termination of this Lease or a surrender of the Premises.

**1602.    Trade Fixtures.**  All trade fixtures owned by Tenant and installed in the Premises shall remain the property of Tenant and shall be removed by Tenant at the expiration of the Term, or the earlier termination of this Lease.

S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

**1603.    Failure to Remove Personal Property.**  If Tenant fails to remove all of its Personal Property by the Expiration Date, then such Personal Property shall be deemed abandoned by Tenant and, at the option of Landlord, shall become the property of Landlord, or may be removed by Landlord at Tenant's expense, or may be placed in storage at Tenant's expense, or may be sold or otherwise disposed of, in which event, subject to the last sentence of this Section 1603, the proceeds of such sale or other disposition shall belong to Landlord.  Tenant's obligations and covenants under this Article 16 shall survive the expiration or termination of this Lease.  Landlord may sell Tenant's Personal Property at private sale and without legal process, for such price as Landlord may obtain, and apply the proceeds of such sale against any amounts due under this Lease from Tenant to Landlord and against any and all expenses incident to the removal, repair of any damage to the Premises resulting or caused by such removal, storage and sale of such Personal Property.

**1604.    Holding Over.**  In the event that Tenant or anyone claiming under Tenant remains in possession of the Premises after the expiration of the Term of this Lease, and without the execution of a new lease, Tenant shall be deemed to be occupying the Premises as a Tenant from month-to-month, subject to all of the terms, conditions, provisions, and obligations of this Lease insofar as the same are applicable to a month-to-month tenancy, except for Minimum Rent. The monthly installment of Minimum Rent for each month of any such month-to-month tenancy shall be an amount equal to one hundred twenty-five percent (125%) of the monthly installment of Minimum Rent payable for the month immediately preceding expiration of the Term. Either Landlord or Tenant may terminate such month-to-month tenancy upon at least thirty (30) days' notice to the other party. This in no way, however, shall be construed as permitting Tenant to holdover. If Tenant holds over beyond the Term of the Lease, the obligations of the guarantor of Tenant's obligations hereunder shall extend to such hold over period and apply with respect to the full and faithful performance and observance of all of the covenants, terms, and conditions of the Lease and of any modification thereof.

<u>**ARTICLE 17**</u>
<u>**UTILITIES AND TRASH**</u>

**1701.    Utilities.**  Tenant shall, at its sole cost and expense, pay promptly when due all fees, deposits and charges for water, gas, electricity, heat, sewer rentals or service charges, including use and/or connection fees, impact fees, hook-up fees and/or standby fees, any other utility and telecommunication charges incurred by Tenant in its use and/or occupancy of the Premises or furnished to the Premises commencing upon the Lease Commencement Date. If Landlord is required or elects to supply water, gas, electricity, heat or sewer rentals, or any other utility service, for the Building and/or the Premises, then Tenant shall purchase the same from Landlord at the then-prevailing local rates and charges, and pay the charges therefor within thirty (30) days after bills are provided to Tenant.

**1702.    Utility Service Providers.**  (a) If permitted by Law, Landlord shall have the right, in its sole discretion, at any time and from time to time during the Term, to either contract for service from different utility companies ("Alternate Service Providers") than those providing utility service on the date hereof ("Utility Service Providers") or continue to contract for service from the Utility Service Providers.   If Landlord elects to change Utility Service Providers pursuant to this Section 1702, Landlord shall bear all costs of changing Utility Service Providers.

            (b) Tenant shall cooperate with Landlord, the Utility Service Providers, and any Alternate Service Providers at all times and, as reasonably necessary, shall allow Landlord, Utility Service Providers, and any Alternate Service Providers reasonable access to all utility lines, feeders, risers, wiring, and any other machinery and/or equipment within the Premises. To the extent Landlord has the ability to control the same, any work to be done by Landlord, Utility Service Providers, and/or Alternate Service Providers, will be done in a manner to minimize, to the extent practicable, interference with Tenant's use and occupancy of the Premises.

            (c) Unless due to the negligence or willful misconduct of Landlord, Landlord shall in no way be liable or responsible for any loss, damage, or expense that Tenant may sustain or incur by reason of any change, failure, interference, disruption, defect, unavailability or unsuitability in the supply or character of the utilities furnished to the Premises, or if the quantity or character of the utility supplied by any Utility Service Providers or any Alternate Service Providers is no longer available or suitable for Tenant's requirements, and, unless due to the negligence or willful misconduct of Landlord, no such change, failure, interference, disruption, defect, unavailability, or unsuitability shall constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of Rent, or relieve Tenant from any of its obligations under this Lease.

**1703.    Interruption.**  Unless due to the negligence or willful misconduct of Landlord, Landlord shall not be liable in damages or otherwise for any utility interruption.

**1704.    Trash.**  Tenant shall arrange for regular, prompt, and reliable trash removal for all trash generated at or associated with the Premises, at Tenant's sole expense, using containers and dumpsters approved by Landlord and at such times in such manner, and in such locations, as Landlord may reasonably direct.  Landlord shall make a shared dumpster available for use by Tenant and the cost thereof shall be included in Common Area Maintenance Charges.  All charges applicable to the

Premises and/or Tenant's use of the Premises, due under the Declaration of Easement shall be included in Common Area Maintenance Charges.  Tenant shall require that any contract entered into by Tenant for trash removal at the Premises be terminable by Tenant upon no more than thirty (30) days' notice.

If Landlord elects, Landlord may provide common dumpsters for the Building, or a portion of the Building, and/or arrange for trash pick-up for one or more tenants. The charges that may be incurred by, or contracted for by, Landlord for maintaining the common dumpsters and/or trash removal are referred to herein as "Trash Charges." If Landlord provides common dumpsters and/or common trash removal services, Tenant shall pay its allocated share of such applicable Trash Charges either (i) as part of Common Area Maintenance Costs, or (ii) as Additional Rent after being billed for same by Landlord, at Landlord's discretion. Tenant's allocated share of the Common Area Maintenance Costs applicable to the Trash Charges specified above shall be such charges multiplied by a fraction, the numerator of which shall be the gross leasable area of the Premises, and the denominator of which shall be the total gross leasable area of all tenants in the Building who use the common dumpsters. If Landlord deems Tenant's generation of trash at the Premises to be excessive, Tenant shall pay Landlord, as Additional Rent, the cost for same which exceeds normal trash generation for a tenant of comparable size.

**1705.    Governmental Limitations.**  If any Laws impose mandatory controls or guidelines on Landlord or the Building or any part thereof, relating to the use or conservation of energy, water, light or electricity or the provision of any other utility service provided with respect to this Lease, or if Landlord is required or elects to make alterations to the Building in order to comply with such mandatory or voluntary controls or guidelines, Landlord shall comply with such mandatory controls or guidelines, or make such alterations to the Building. Neither such compliance nor the making of such alterations shall in any event entitle Tenant to any damages, relieve Tenant of the obligation to pay any of the sums due hereunder, or constitute or be construed as a constructive or other eviction of Tenant.

## ARTICLE 18
### SIGNS

**1801.    Sign Standards.**  Tenant shall, at its own expense prior to the expiration of the Fixturing Period, install and at all times thereafter maintain in good condition and repair an exterior sign, of such size, color, design, illumination and location, all as designated and approved by Landlord, which approval shall not be unreasonably withheld. The sign(s) must conform to all requirements of governmental and regulatory bodies, and be in compliance with all Laws. During the Fixturing Period, Tenant shall submit to Landlord four (4) copies of Tenant's sign plans and specifications, showing in complete detail the proposed construction and installation of Tenant's exterior sign (the "Sign Plans"). Tenant's Sign Plans shall include a rendering of the proposed sign superimposed on the building elevation drawings (using size and placement to scale as reasonably possible). Tenant shall not be entitled to install its signs until the same are approved by Landlord.  Tenant's exterior sign(s) shall be kept illuminated from dusk until 10:00 p.m. every day.

**1802.    Sign Limitations.**  Tenant shall not display any sign, lettering or lights on or adjacent to the exterior walls of the Premises, including, without limitation, both interior and exterior surfaces of windows and all surfaces of the Premises, unless first approved by Landlord in writing, such approval not to be unreasonably withheld, conditioned or delayed. Except for normal size, professionally designed and manufactured credit card emblems and store hours, Tenant shall not attach any sign to the inside of any window of the Premises which may be visible through such window from the outside of the building in which the Premises are located without the prior written approval of Landlord. Tenant shall at no time utilize any hand-drawn signs, scotch plaid decal strips or flashing or neon signs or lights in or on the Premises, and the bulbs of all Tenant's permitted signs and lights shall be replaced as soon as they become defective or lose their intensity. No rights are granted to Tenant to use the outer walls or the roof of the Premises for any purpose without Landlord's prior written consent, such approval not to be unreasonably withheld, conditioned or delayed. Tenant shall be responsible, at its sole cost and expense, for the fabrication, installation, maintenance, repair (including replacement) and operation of all its signs. All signage installed by Tenant shall comply with all Laws.

**1803.    Intentionally Deleted.**

**1804.    Sign Removal.**  Prior to the Expiration Date, Tenant shall remove all signs in or on the Premises and shall repair any damage, including the filling of holes caused by the installation or removal of the signs.

## ARTICLE 19
### RIGHTS OF LANDLORD

**1901.    Reserved Rights.**  Landlord reserves the following rights with respect to the Premises:

(a) For Landlord and any Mortgagee, and their representatives, to have free and unrestricted access to, and to enter upon, the Premises at all reasonable hours (or in the event of an emergency at any time) for the purposes of inspecting the Premises, or of making repairs, replacements or improvements in or to the Premises, the building, equipment,

15

or all or any portion of the Building (including, without limitation, sanitary, electrical, HVAC or other systems), or of complying with Laws, or of exercising any right reserved to Landlord under this Lease (including the right during the progress of any repairs, replacements, improvements or other work permitted or required by this Lease to keep and store within the Premises all necessary materials, tools and equipment);

(b)   To show, at reasonable times, the Premises during ordinary business hours to any existing or prospective Mortgagee, tenant, purchaser, assignee of any loan secured by the Building, or any portion thereof, or assignee of any interest in Landlord, and/or to any person contemplating the leasing of the Premises or any part thereof. If during the last month of the Term or any renewal or extension thereof, Tenant shall have removed all or substantially all of Tenant's trade fixtures from the Premises, Landlord may immediately enter and alter, renovate, and redecorate the Premises, without elimination or abatement of Rent, and without incurring any liability to Tenant for any compensation or otherwise, and such acts shall have no effect upon this Lease and shall not be deemed to release Tenant from any of Tenant's obligations under this Lease, including the obligations to return certain property, to repair and restore the Premises and to pay the full Rent and other sums due hereunder;

(c)   To display a "For Sale" sign at any time, and also, after notice from either party of intention to terminate (as permitted pursuant to the provisions of the Lease) this Lease, or at any time within six (6) months prior to the Expiration Date, a "For Rent" sign, or both "For Rent" and "For Sale" signs, and all of said signs shall be placed upon such part of the Premises as Landlord shall require, except on display windows or doors leading into the Premises. Prospective purchasers or tenants authorized by Landlord may inspect the Premises at reasonable hours;

(d)   To install or place upon, or affix to, the roof and exterior walls of the Premises equipment, signs, displays, antenna, and any other object or structure of any kind, provided the same shall not materially and adversely impair the structural integrity of the building in which the Premises are located or materially and adversely interfere with Tenant's occupancy;

(e)   At any time, and from time to time, to make alterations or additions to, and to build additional stories on, the Building, and to build in or on the areas adjoining the Premises. Landlord also reserves the right to construct other buildings or improvements or add to existing buildings or facilities in the Building;

(f)   Intentionally Deleted;

(g)   At any time, and from time to time, to use all or any part of the roof and exterior walls of the Premises for any purpose; to erect scaffolds, protective barriers and other aids to construction on, around and about the exterior of the Premises, provided that access to the Premises shall not be completely denied; to enter the Premises to shore the foundations and/or walls thereof and/or to install, maintain, use, repair, inspect and replace pipes, ducts, conduits and wires leading through the Premises and serving other parts of the Building in locations which do not materially and adversely interfere with Tenant's use of the Premises. Tenant further agrees that Landlord may make any use it desires of the side or rear walls of the Premises, provided that there shall be no encroachment upon the interior of the Premises;

(h)   If an excavation shall be made or authorized to be made upon land adjacent to the Premises, Tenant shall afford to the person causing or authorized to cause such excavation license to enter upon the Premises for the purpose of doing such work as Landlord shall deem necessary to preserve the wall or the building of which the Premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnification against Landlord or diminution or abatement of rent;

(i)   Subject to subsection (l), Landlord shall not be liable in any such case for any inconvenience, disturbance, loss of business or any other losses or annoyance arising from the exercise of any or all of the rights of Landlord under this Article 19;

(j)   The purpose of the plan annexed hereto as **Exhibit A** is solely to show the approximate location of the Premises and shall not be deemed to be a warranty, representation or agreement of any kind on the part of the Landlord. Landlord hereby reserves the right at any time, and from time to time, to make changes or revisions in such plan, but the foregoing shall not be deemed a right to relocate the Premises;

(k)   Intentionally Deleted;

(l)   Landlord shall provide Tenant reasonable prior notice of any planned entry in the Premises by Landlord and an opportunity to be present therefor, except in the event of an emergency where prior notice shall not be required.  If Tenant shall not be personally present to open and permit an entry into the Premises at any time when for any reason an entry therein shall be necessary or permissible, Landlord Parties may enter the same by a master key, or may forcibly enter the same, without rendering Landlord Parties liable therefor, and without any abatement of Rent or in any manner affecting the

16

obligations and covenants of this Lease. Landlord shall exercise its rights of access to the Premises permitted under any of the provisions of this Lease in such manner as to minimize, to the extent practicable, interference with Tenant's use and occupancy of the Premises; and

(m) Landlord has the right, at Landlord's sole and absolute discretion, at any time during the Term, to remodel or change the roof and/or other exterior surfaces of the Building. Tenant understands that, during such remodeling, it might be necessary to remove Tenant's existing sign(s) and that such sign(s) may not be suitable for reinstallation after the remodeling is completed. Such sign(s), or part thereof, which Tenant has installed, shall remain the property of Tenant, but Landlord shall bear all costs associated with said removal and any required replacement of Tenant's sign. During any such remodeling, Tenant shall cooperate with Landlord and execute any documentation required or desirable to facilitate the remodeling process. Tenant understands that it may be necessary to erect scaffolds or other construction equipment during the remodeling, but access to the Premises shall not be denied.

## ARTICLE 20
## DAMAGE TO PREMISES

**2001.    Landlord's Obligation to Restore.**  If the Premises shall be damaged by fire or other cause, this Lease shall not be terminated and Landlord shall proceed with diligence, subject to applicable Laws, and as soon as practicable after such damage occurs, to repair such damage (excluding Tenant's leasehold improvements, trade fixtures, furniture, equipment and Personal Property or other items Tenant is required to insure or for which it has insurance coverage, all of which shall be restored by Tenant) at the expense of Landlord, if Landlord is insured with respect thereto to the extent of insurance proceeds made available to Landlord by any Mortgagees, or at the expense of Tenant, if Tenant is required to be insured hereunder with respect to such damage (in either case taking into account the time necessary to effectuate a satisfactory settlement with any insurance company involved and for such other delays as may result from government restrictions, controls on construction, if any, and strikes, emergencies, and other conditions beyond the control of the parties); provided, however, that if (i) the Premises are damaged by fire or other cause to such extent that the damage, in Landlord's reasonable determination, cannot be fully repaired within ninety (90) days from the date of settlement of the insurance claims and Landlord's obtaining building permits or (ii) if the building of which the Premises are a part is damaged to the extent of more than fifty percent (50%) of the cost of replacement thereof and such damage cannot be repaired within one hundred eighty (180) days from the date of such occurrence, then Landlord may terminate this Lease by notice to Tenant within sixty (60) days after the date of the casualty. Landlord may only elect to terminate the Lease pursuant to (ii) in the immediately preceding sentence if Landlord also terminates all of the leases with similarly situated tenants in the building of which the Premises are a part provided Landlord has the right to terminate under the terms of such leases. Notwithstanding anything herein to the contrary, Landlord shall have the right to terminate this Lease if (1) insurance proceeds are insufficient to pay the full cost of such repair and restoration, (2) the holder of any Mortgage fails or refuses to make such insurance proceeds available for such repair and restoration, or (3) zoning or other applicable Laws do not permit such repair and restoration.

If this Lease is not terminated by Landlord and Landlord does not either: (i) obtain a building permit for any repairs, rebuilding or restoration required hereunder within six (6) months after the date of such damage or destruction; or (ii) substantially complete such repairs, rebuilding or restoration within two hundred seventy (270) days after the date of such damage or destruction (subject, however, to Force Majeure), then, in either event, Landlord or Tenant may, at any time thereafter, terminate this Lease by sending thirty (30) days' written notice thereof to the other, except, however, Tenant's notice of termination to Landlord shall not be effective if Landlord, within said thirty (30) day period, shall obtain such permit or substantially complete the repairs, rebuilding or restoration as aforesaid, as the case may be.

**2002.    Abatement.**  Subject to the provisions of the next succeeding sentence, during the period that Tenant is deprived of the use of the damaged portion of the Premises, Tenant shall be required to pay Rent adjusted in the manner described below to cover only that part of the Premises that Tenant is able to occupy, and the Rent for such space shall be that portion of the total Rent which the amount of the gross leasable area of the Premises remaining that can be occupied by Tenant bears to the total gross leasable area of the Premises. If such damage is caused in part by the fault or neglect of the Tenant Parties, and if Landlord, or any Mortgagee, shall be unable to collect the insurance proceeds applicable to such damage as a result thereof, such damage shall be repaired promptly, at Tenant's sole cost and expense, either by Landlord or, at Landlord's option, by Tenant, subject to Landlord's direction and supervision, and there shall be no abatement of Rent. Landlord shall not be liable for delays in making of any such repairs that are due to Force Majeure.

**2003.    Notice.**  Tenant shall give Landlord prompt written notice of any accident, fire or damage occurring on or to the Premises.

17

## ARTICLE 21
## CONDEMNATION

**2101.    Taking.**  If all of the Premises (or all rights of use or occupancy of the Premises) or any material portion of the Premises shall be taken or condemned by any governmental or quasi-governmental authority for any public or quasi-public use or purpose, or purchased by such authority under threat of such taking (collectively, a "Taking"), this Lease shall cease and terminate as of the date when title vests in such governmental or quasi-governmental authority and the Rent shall be abated on the date when such title vests in such governmental or quasi-governmental authority. If less than all of the Premises is the subject of a Taking and the Premises remain suitable for the Permitted Use, as reasonably determined by Tenant, the Rent shall be equitably adjusted on the date when title to the portion of the Premises taken vests in such governmental or quasi-governmental authority and the Lease shall otherwise continue in full force and effect. Tenant shall have no claim against Landlord (or otherwise) for any portion of the amount that may be awarded as damages as a result of any Taking, or for the value of any unexpired portion of the Term, or for loss of profits or moving expenses, or for any other claim or cause of action resulting from such Taking. Tenant shall have the right to make a separate claim against the condemning authority for moving expenses, loss of business, and any other awards to which it may be entitled separately from any award due to Landlord as long as such award to Tenant does not diminish Landlord's award.

## ARTICLE 22
## BANKRUPTCY

**2201.    Events of Bankruptcy.**  The following shall be "Events of Bankruptcy" under this Lease:

(a) Tenant's or Tenant's guarantor, if any, becoming insolvent, as that term is defined in Title 11 of the United States Code, entitled Bankruptcy, 11 U.S.C. Section 101 et seq. (the "Bankruptcy Code"), or under the insolvency laws of any state, district, commonwealth, or territory of the United States (the "Insolvency Laws");

(b) the appointment of a receiver or custodian for all or a substantial portion of Tenant's or Tenant's guarantor, if any, property or assets, or the institution of a foreclosure action upon all or a substantial portion of Tenant's or Tenant's guarantor, if any, real or personal property;

(c) the filing by Tenant or Tenant's guarantor, if any, of a voluntary petition under the provisions of the Bankruptcy Code or Insolvency Laws;

(d) the filing of an involuntary petition against Tenant or Tenant's guarantor, if any, as the subject debtor under the Bankruptcy Code or Insolvency Laws, which is either not dismissed within thirty (30) days of filing, or results in the issuance of an order for relief against the debtor, whichever is later; or

(e) Tenant's or Tenant's guarantor, if any, making or consenting to an assignment for the benefit of creditors or a common law composition of creditors.

**2202.**    Landlord's remedies upon the occurrence of an Event of Bankruptcy shall be as follows:

(a) Landlord shall have the right to terminate this Lease and/or any services being provided to Tenant under this Lease by giving notice to Tenant, whereupon Tenant shall be immediately obligated to quit the Premises. Any other notice to quit or notice of Landlord's intention to re-enter is hereby expressly waived. If Landlord elects to terminate this Lease, everything contained in this Lease on the part of Landlord to be done and performed shall cease without prejudice, subject, however, to the right of Landlord to recover from Tenant all Rent and any other sums accrued up to the time of termination or recovery of possession of the Premises by Landlord, whichever is later, and any other monetary damages or loss of Rent sustained by Landlord; provided, however, and notwithstanding the foregoing or any remedies set forth in this Section 2202, Landlord shall not have the right to terminate this Lease while a case in which Tenant is the subject debtor under the Bankruptcy Code is pending, unless Tenant or Tenant's trustee in bankruptcy (the "Trustee") is unable to comply with the provisions of Sections 2202(e), (f) and (g) below.

(b) Upon termination of this Lease pursuant to Section 2202(a), Landlord may proceed to recover possession under and by virtue of the provisions of the Laws of the jurisdiction in which the Building is located, or by such other proceedings, including re-entry and possession, as may be applicable.

(c) Upon termination of this Lease pursuant to Section 2202(a), Landlord shall have the option to relet the Premises for such rent and upon such terms as are not unreasonable under the circumstances and, if the full Rent reserved under this Lease (and any of the costs, expenses, or damages indicated below) shall not be realized by Landlord, Tenant shall be liable for all damages sustained by Landlord, including, without limitation, deficiency in Rent, reasonable attorneys' fees, brokerage fees, and expenses of placing the Premises in first-class rentable condition. Landlord, in putting the Premises in good order or

18

preparing the same for re-rental, may, at Landlord's option, make such alterations, repairs or replacements in and to the Premises as Landlord, in its sole discretion, considers advisable and necessary for the purpose of reletting the Premises, and the making of such alterations, repairs or replacements shall not operate or be construed to release Tenant from liability under this Lease. Landlord shall in no event be liable in any way whatsoever for failure to relet the Premises, or if the Premises are relet, for failure to collect the rent under such reletting, and in no event shall Tenant be entitled to receive the excess, if any, of such net rent collected over the sums payable by Tenant to Landlord hereunder.

(d) Any damage or loss of Rent sustained by Landlord as a result of an Event of Bankruptcy may be recovered by Landlord, at Landlord's option, at the time of the reletting, or in separate actions, from time to time, as said damage shall have been made more easily ascertainable by successive relettings, or in a single proceeding deferred until the Expiration Date (in which event Tenant hereby agrees that the cause of action shall not be deemed to have accrued until the Expiration Date), or in a single proceeding prior to either the time of reletting or the Expiration Date, in which event Tenant shall pay Landlord the difference, if any, between the present value of the Rent reserved under this Lease on the date of breach, discounted at eight percent (8%) per annum, and the fair market value of the Lease on the date of breach. If Tenant becomes the subject debtor in a case under the Bankruptcy Code, the provisions of this Section 2202(d) may be limited by the limitations of damage provisions of the Bankruptcy Code. In addition, Tenant shall reimburse Landlord for its reasonable attorneys' fees incurred in enforcing or interpreting the provisions of this Article 22, including, but not limited to, any and all costs incurred in consulting with its attorneys with respect to any suit or dispute under this Lease, whether or not suit is brought, and any and all costs of litigation with respect to such enforcement or interpretation (which, with regard to any suit or dispute whereby Landlord is seeking a monetary recovery, are hereby stipulated to be fifteen percent (15%) of the monies awarded to Landlord).

(e) If Tenant becomes the subject debtor in a case pending under the Bankruptcy Code, Landlord's right to terminate this Lease pursuant to this Article 22 shall be subject to the rights of Tenant or the Trustee to assume or assign this Lease. Tenant or the Trustee shall not have the right to assume or assign this Lease unless Tenant or the Trustee, within thirty (30) days of the Event of Bankruptcy (a) cures all defaults under this Lease, (b) compensates Landlord for monetary damages incurred as a result of such default, (c) provides "adequate assurance of future performance" (as defined in Section 2202 (f) below) and (d) complies with all provisions of Section 2202 of this Lease.

(f) Landlord and Tenant hereby agree in advance that the phrase "adequate assurance of future performance", as used in this Section 2202, includes adequate assurance (a) of the source of Rent and other consideration due under this Lease, and, in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of Tenant and its guarantors, if any, as of the time Tenant became Tenant under this Lease; (b) that any assumption or assignment of this Lease is subject to all the provisions hereof, including, but not limited to, location, use and exclusivity, and will not breach any such provisions contained in any other lease or financing agreement; and (c) that any assumption or assignment of this Lease will not disrupt or adversely affect the tenant mix or balance in the Building.

(g) If Tenant or the Trustee, as applicable, is unable (a) to cure Tenant's defaults, (b) to reimburse Landlord for its monetary damages, (c) to pay when due the Rent due under this Lease, or any other payments required of Tenant under this Lease or (d) to meet the criteria and obligations imposed by Section 2202(f) above, then Tenant agrees in advance that it has not met its burden to provide adequate assurance of future performance, and this Lease may be terminated by Landlord in accordance with Section 2202(a) above.

## ARTICLE 23
## ASSIGNMENT AND SUBLET

**2301.   Consent.** Without the prior written consent of Landlord in each instance, which consent may be given or withheld in Landlord's sole and absolute discretion, Tenant shall not assign, Mortgage, pledge, encumber, sublet, underlet, license or permit the Premises or any part thereof to be used by others, or otherwise transfer, voluntarily, by operation of law, or otherwise, this Lease or the Premises or any interest herein or therein. Neither the Premises, nor any part thereof, will be used, occupied or managed, or permitted to be used, occupied or managed, by anyone other than Tenant, or used for any purpose other than as permitted under this Lease, or be advertised for subletting. A sale, transfer, assignment, conveyance, endorsement or other disposition of (a) a general partnership interest, if Tenant is partnership, (b) a managing member's interest, if Tenant is a limited liability company or (c) fifty percent (50%) or more of the capital stock of Tenant (if Tenant is a corporation) or of the interest in capital, profits, or losses of Tenant (if Tenant is a partnership, limited liability company or partnership)shall be deemed to be an assignment of this Lease within the meaning of this Section 2301, unless such sale or transfer (i) is made by a publicly owned corporation, (ii) involves the sale or issuance of securities registered under the Securities Act of 1933, as amended, (iii) is made entirely amongst the existing stockholders or interest holders of Tenant, or (iv) results from the death of a stockholder or interest holder of Tenant. The transactions described in this Article are sometimes referred to in Article 23 as a "Transfer", and the person to whom Tenant's interest is transferred shall be referred to as a "Transferee."

19

Notwithstanding the foregoing, Landlord's consent to an assignment of this Lease or a subletting of the entire Premises shall not be unreasonably withheld, conditioned, or delayed.  Without limiting the generality of this Article 23, it will be reasonable for Landlord to refuse consent to any Transfer if, at the time of either Tenant's notice of the proposed Transfer or the proposed commencement date thereof (i) there shall exist an Event of Default or matter which will become an Event of Default with passage of time or the giving of notice, or both, unless cured; (ii) the proposed Transferee is an entity (aa) with which Landlord is already in negotiation as evidenced by the issuance of a written proposal; (bb) which is already an occupant of the Building; (cc) which is incompatible with the character of occupancy of the Building; or (dd) which would subject the Premises to a use which would (1) involve increased insurance, personnel or wear upon the Building, (2) violate any exclusive rights or other use restrictions contained in the lease of another tenant of the Building, or violate **Exhibit E** attached to this Lease, or conflict with the primary use of another tenant, or (3) require any addition to (including improvements thereon) or modification of the Premises, or all or any portion of the Building, or any additional action by Landlord, in order to comply with building code or other governmental requirements (unless the Transferee agrees to bear the cost thereof); (iii) the tangible net worth (exclusive of good will) of the Transferee, immediately prior to and following such Transfer, is less than the aggregate tangible net worth (exclusive of good will) of Tenant and any guarantors of Tenant's obligations hereunder on the Date of Lease; (iv) the Transferee has less than five (5) years' experience with respect to owning and operating the same type of business as the Permitted Use; (v) the nature of the proposed Transferee's proposed or likely use of the Premises would involve any increased risk of the use, release or mishandling of any Hazardous Substances (as defined in Article 31 hereinbelow); or (vi) the business reputation or character of the proposed Transferee or the business reputation or character of any of its affiliates is not reasonably acceptable to Landlord.  In no event may Tenant mortgage, pledge or otherwise encumber its leasehold interest as collateral for a debt.

**2302.    Permitted Transfer.**  Notwithstanding the provisions of Section 2301 hereinabove, Tenant may assign this Lease or sublet the entire Premises without Landlord's consent, as long as Tenant provides notice to Landlord within thirty (30) days following such assignment or sublease, if:

(i)    the Transferee is an affiliate or an entity which may, as a result of a reorganization, merger or consolidation, succeed to the entire business carried on by Tenant; or

(ii)    the Transfer is part of a chain-wide assignment or sale of all of Tenant's stores (but no fewer than five (5) stores), the Transferee has management experience in the particular type of business conducted on the Premises and such experience is at least equal to that of Tenant as of the Date of Lease.

and provided that:

(1)    the Transfer consists of all of Tenant's leasehold interest or of the entire Premises, as the case may be, and, in the case of an assignment, shall transfer to the assignee all of Tenant's rights in, and interest under, this Lease, including, but not limited to, the Security Deposit, if any; and

(2)    at the time of such Transfer, this Lease is in full force and effect without any Event of Default hereunder on the part of Tenant; and

(3)    the Transferee shall (A) if the same is an assignment, assume, by written instrument, in form and content satisfactory to Landlord, the due performance of all of Tenant's obligations under this Lease, including any accrued obligations as of the time of the Transfer, and (B) agree to perform and observe all of Tenant's representations, warranties, and duties under this Lease; and

(4)    a copy of the assignment or sublease and the original assumption agreement, fully executed and acknowledged by the Transferee, shall have been delivered to Landlord within thirty (30) days after the effective date thereof; and

(5)    such Transfer shall be upon and subject to all the provisions, terms, covenants and conditions of this Lease, including the requirement to use the Premises only for the Permitted Use; and

(6)    Tenant shall have obtained and furnished to Landlord the written consent of the guarantor of this Lease, if any, wherein said guarantor, in accordance with the terms of the guaranty executed by such guarantor guaranteeing Tenant's obligations and covenants under this Lease, agrees to continue to be the guarantor of the terms, obligations, and covenants of Tenant and Tenant's successor under this Lease notwithstanding such Transfer; and

(7)    neither the Transferee nor its parent, subsidiaries or affiliates shall be subject to any bankruptcy or insolvency proceedings at the time of such Transfer.

The term "affiliate" shall mean an entity that directly or indirectly controls or is controlled by, or is under common control with Tenant.  For this purpose, "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through the ownership of voting securities or by contract or otherwise.

Notwithstanding anything herein to the contrary, Tenant shall not exercise any of its rights under this Section 2302 in a manner intended to circumvent restrictions otherwise contained in this Article 23 (e.g., a step transaction in which this Lease is assigned to a wholly owned subsidiary whose only asset is this Lease, followed by a sale of such subsidiary's stock to a third party).

**2303.   Intentionally Deleted.**

**2304.   Notice.**  If Tenant desires to sublet the entire Premises, or assign this Lease, Tenant shall give written notice to Landlord at least thirty (30) days prior to the proposed commencement date of the subletting or assignment.  The notice shall set forth or be submitted with the following: (i) the name of the proposed Transferee, (ii) the balance sheets and profit and loss statements for the proposed Transferee or any other person to be liable for Tenant's obligations under this Lease covering the prior three (3) years (or for such shorter period as the proposed Transferee or other person may have been in existence), all certified as true and correct by the proposed Transferee, or an authorized officer thereof or such other person as may be liable for Tenant's obligation under this Lease, (iii) a full description of the terms and conditions of the proposed Transfer, including copies of any and all documents and instruments, any purchase and sale agreements, sublease agreements, assignment agreements and all other writings concerning the proposed Transfer, (iv) a description of the proposed use of the Premises by the proposed Transferee, including any required or desired alterations or improvements to the Premises that may be undertaken by such Transferee in order to facilitate its proposed use, (v) a business plan for the proposed Transferee's operations at the Premises, including a statement of projected income, expense, and cash flow for such operation for the two (2) years following the proposed effective date of the Transfer, (vi) a list of personal, business and credit references of the proposed Transferee, (vii) the same information set forth in (i) through (iv) and (vi) of this Section 2304 but pertaining to any guarantor or other person who will be liable in any manner for the payment of any amounts under the Lease, and (viii) any other information, documentation or evidence that may be reasonably requested by Landlord.  The foregoing shall not apply to a Transfer under Section 2302.

**2305.   Recapture.**  Landlord shall have the option, in its sole discretion, to terminate this Lease, if Tenant requests Landlord's consent to a Transfer.  The option shall be exercised by Landlord giving Tenant written notice within thirty (30) days following Landlord's receipt of Tenant's written notice as required by Section 2304.  The Term shall end on the date stated in Tenant's notice as the effective date for the Transfer.  The foregoing shall not apply to a Transfer pursuant to Section 2302.

**2306.   No Waiver.**  Consent by Landlord to any assignment, subletting or other Transfer shall not include or be construed as consent to any Transfer by Tenant or its Transferee.  Any Transfer by Tenant which does not comply with the provisions of this Article 23 shall be void.

**2307.   Profit.**  Notwithstanding Landlord's consent, if Tenant sells, sublets, assigns, or otherwise Transfers this Lease and at any time receives periodic rent or other consideration which exceeds that which Tenant would at that time be obligated to pay Landlord under this Lease, Tenant shall pay to Landlord fifty percent (50%) of the net increase in rent as the rent is received by Tenant and fifty percent (50%) of any other net consideration received by Tenant from the Transferee.  The foregoing shall not apply to a Transfer pursuant to Section 2302.

**2308.   Assumption.**  Should Landlord consent to a Transfer, Tenant, its proposed Transferee and Landlord shall execute an agreement prepared by, or acceptable to, Landlord in its sole reasonable discretion, under which the proposed Transferee shall be bound by the terms and conditions of this Lease.  Any consent by Landlord to a Transfer shall not in any manner be construed to relieve Tenant, any guarantor or any of their Transferees from obtaining the consent in writing of Landlord to any further Transfer, nor shall the same release or discharge Tenant from any liability, past, present or future, under this Lease, and Tenant shall continue fully liable in all respects hereunder.  Further, all of the provisions of this Article 23 shall apply to any proposed Transfer by any Transferee and their respective Transferees.  Notwithstanding anything contained herein to the contrary, if an Event of Default exists hereunder, Tenant shall not be permitted to make a Transfer.

**2309.   Intentionally Deleted.**

**2310.   Continuing Liability.**  Notwithstanding any permitted Transfer, Tenant shall at all times remain directly and primarily liable for the payment of Rent and for compliance with all of its other obligations under this Lease.  Upon the occurrence of an Event of Default under Article 26 of this Lease, if the Premises or any part of the Premises are then sublet, Landlord, in addition to any other remedies provided in this Lease or by law, may collect directly from the subtenant all rents due and becoming due to Tenant under the sublease and apply the rent against sums due Landlord from Tenant under this Lease.  The collection of any Rent directly from an assignee or subtenant shall not be construed to constitute a novation or release of

21

Tenant from the further performance of Tenant's obligations nor shall such acceptance of Rent be construed as a waiver of any Tenant violation under Article 23.  Any guaranty of Tenant's performance executed as consideration for this Lease shall remain in full force and effect before and after any Transfer.  Landlord may require Tenant, and Tenant agrees, to execute a guaranty of this Lease before Landlord consents to any Transfer.  Landlord may proceed directly against Tenant without first exhausting any remedies for default which Landlord may have against any Transferee.  In the event of a termination, re-entry or dispossess by Landlord following a sublease by Tenant, Landlord may, at Landlord's option, take over all of the right, title and interest of Tenant (as sublessor) under such sublease, and the subtenant shall, at Landlord's option, attorn to Landlord pursuant to the provisions of such sublease.

**2311.   Review Charges.**  Tenant shall pay to Landlord $2,500.00 for attorneys' fees and administrative expense involved with the review, processing or preparation of any documentation in connection with a Transfer, whether or not Landlord's consent to such Transfer is required or obtained.  Such fee shall be paid at the same time that Tenant submits its request for such Transfer.

**2312.   Bankruptcy.**  Anything contained in this Lease to the contrary notwithstanding, and without prejudice to Landlord's right to require a written assumption from each Transferee, any person or entity to whom this Lease is transferred including, without limitation, assignees pursuant to the provisions of the Bankruptcy Code, shall automatically be deemed to have assumed all obligations of Tenant arising under this Lease.  If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, any and all monies or other consideration payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord and shall remain the exclusive property of Landlord and not constitute the property of Tenant or Tenant's estate within the meaning of the Bankruptcy Code.  All such money or other consideration not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid or delivered to Landlord.

**ARTICLE 24**
**SUBORDINATION; ESTOPPEL**

**2401.   Subordination.**  This Lease, automatically and without further act or deed by Tenant, shall be subordinate to any and all Mortgages currently existing or that may hereafter be placed upon the Building, or any portion thereof, and to any and all renewals, amendments, modifications, participations, consolidations, replacements and extensions thereof.  Upon the request of Landlord or any Mortgagee or prospective Mortgagee, Tenant shall confirm such subordination by executing and delivering within twenty (20) days of such request whatever documents Landlord or any present or prospective Mortgagee may reasonably require to reflect such subordination.  Tenant hereby constitutes and appoints Landlord its true and lawful attorney-in-fact in Tenant's name (which power of attorney shall be deemed irrevocable and a power coupled with an interest) to execute such confirmation if Tenant shall fail to do so within such 20-day period.  Said subordination and the provisions of this Section shall be self-operative and no further instrument of subordination shall be required by the holder of any Mortgage.  The holder of any Mortgage to which this Lease is subordinate shall have the right (subject to any required approval of the holders of any superior Mortgage) at any time to declare this Lease to be superior to the lien, provisions, operation and effect of such Mortgage and Tenant shall execute, acknowledge and deliver all documents required by such holder in confirmation thereof.  Tenant waives the provisions of any statute or rule of law now or hereafter in effect which may give or purport to give Tenant any right to terminate or otherwise adversely affect this Lease and Tenant's obligations hereunder in the event any foreclosure proceeding is prosecuted or completed or in the event the Building or Landlord's interest therein is transferred by foreclosure, by deed in lieu of foreclosure or otherwise.  This Lease is subject to all documents of record.  Landlord warrants to Tenant that, as of the Date of Lease and to Landlord's actual knowledge, none of such documents of record prohibit the use of the Premises for the Permitted Use.

**2402.   Estoppel.**  Tenant shall, at any time and from time to time within five (5) days following written notice from Landlord, execute, acknowledge and deliver to Landlord and any person designated by Landlord in such notice, a statement in writing: (i) certifying, as true and complete, a copy of and identifying all the documents constituting this Lease and the dates thereof, (ii) certifying that this Lease is unmodified and in full force and effect (or if modified, that the same is in full force and effect as modified and stating the date and identifying such modifications), (iii) stating the last dates to which the Minimum Rent and Additional Rent have been paid, the amount(s) thereof and the extent such Rent has been paid in advance, (iv) stating whether Landlord has completed all work or installations required under the Lease, (v) stating whether or not Landlord is in default in the performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default, or any Event of Default, and (vi) stating or certifying as to such other matters with respect to this Lease, the Premises or the respective parties' obligations hereunder as may be reasonably requested by Landlord or by any present or prospective Mortgagee or purchaser of the Premises or Building.  Any such statement delivered pursuant hereto may be relied upon by any owner of the Building, or any portion thereof, any prospective purchaser of the Building, or any portion thereof, any Mortgagee, or any prospective assignee of any of the foregoing.  The failure of Tenant to deliver any estoppel certificate in the time and in the manner required by this Section 2402 shall be deemed to be Tenant's express acknowledgment that the information set forth in any estoppel certificate delivered to Tenant for execution is true, correct and complete and agreed to by Tenant.  Tenant hereby constitutes and appoints Landlord its true and lawful attorney-in-fact in Tenant's name (which power of

22

attorney shall be deemed irrevocable and a power coupled with an interest) to execute such statements if Tenant shall fail to do so within such five (5)-day period.

**2403.    Attornment.**  If the Lease is not extinguished upon any such transfer or by the transferee following such transfer, then at the request of such transferee, Tenant will attorn to and recognize any purchaser of the Building, or any portion thereof, at a foreclosure sale under any Mortgage, any transferee who acquires the Building, or any portion thereof, by deed in lieu of foreclosure, and the successor and assigns of such purchasers, as successor Landlord under this Lease for the unexpired balance of the Term of this Lease upon the same terms and conditions set forth in this Lease.

**2404.    Mortgagee Liability.**  Tenant agrees that if any Mortgagee shall succeed to the interest of Landlord under this Lease, such Mortgagee shall not be:

(a)    liable for any act or omission of the Landlord prior to the date such Mortgagee shall succeed to the interest of Landlord under this Lease;

(b)    liable for the return of all or any part of the Security Deposit unless such Security Deposit has been turned over to the Mortgagee;

(c)    subject to any offsets or defenses which Tenant might have against the Landlord prior to the date such Mortgagee shall succeed to the interest of Landlord under this Lease;

(d)    bound by any Rent which Tenant might have paid more than one month in advance; or

(e)    bound by any amendment or modification of this Lease made without such Mortgagee's prior written consent.

**2405.    Evidence.**  Although the provision of Sections 2401, 2403 and 2404 are effective automatically and without further act or deed by Tenant, Tenant shall execute, acknowledge and deliver any and all documents deemed necessary to further evidence Tenant's agreement with these provisions.

**2406.    Intentionally Deleted.**

**2407.    Financial Statements.**  Within fifteen (15) days of receipt of a request therefor from Landlord (which request shall not be more frequent than once every twelve (12) months in the absence of an Event of Default, unless in connection with the sale or refinancing of the Building), Tenant shall forward to Landlord a financial statement for its most recent completed fiscal year of Tenant and/or, if applicable, Tenant's guarantor or surety, certified by an officer of Tenant or guarantor, as applicable.

**2408.    Notice to Mortgagee.**  Tenant shall give any Mortgagee a copy of any notice of default served upon Landlord, provided that prior to such notice Tenant has been notified, in writing (by way of notice of assignment of rents and leases, or otherwise) of the address of such Mortgagee.  Tenant further agrees that if Landlord shall have failed to cure such default within the time provided for in this Lease, then the Mortgagee(s) shall have an additional thirty (30) days within which to cure such default, or, if such default cannot be cured within that time, such additional time as may be necessary if, within such thirty (30) days, any such Mortgagee(s) has commenced and is diligently pursuing the remedies necessary to cure such default, in which event this Lease shall not be terminated so long as such remedies are being diligently pursued and completed within an additional one hundred twenty (120) days.

**2409.    Failure to Provide Required Documents.**  If Tenant fails to return any document or statement provided for in this Article 24 within the time period required by this Article 24 and such failure continues for a period of five (5) business days after an additional reminder notice from Landlord stating in all capital bold, 12-point font that a failure to deliver the same will incur a penalty under this Section, Tenant shall pay to Landlord, in addition to any other remedies Landlord may have hereunder, a charge of Twenty-five Dollars ($25.00) per day until Tenant returns such document or statement, except that the time frames for delivery hereunder will be extended on account of Force Majeure.

### ARTICLE 25
### RECORDATION

**2501.    No Recordation.**  It is agreed that Tenant shall not record this Lease and/or its Exhibits.  Any violation of this clause shall be deemed an Event of Default on the part of Tenant, and Landlord, in addition to other remedies available for an Event of Default, shall be entitled to take all steps necessary to remove the Lease and/or its Exhibits from any records.

S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

## ARTICLE 26
## DEFAULT

**2601.    Events of Default.**  The occurrence of any of the following shall constitute an event of default (each, an "Event of Default") under this Lease:

(a)      Failure of Tenant to pay any Rent within five (5) business days after receipt of notice that the same is past due, provided Tenant shall not be entitled to such notice and cure right more than two (2) times in any period of twelve consecutive months;

(b)      Failure of Tenant to commence business as required under this Lease;

(c)      Intentionally deleted;

(d)      Abandonment of the Premises;

(e)      An Event of Bankruptcy;

(f)      Intentionally deleted;

(g)      Breach or failure of Tenant to strictly comply with any of the terms and provisions of Articles 9, 23, 24 and 25 of this Lease;

(h)      Tenant's failure to perform any covenant, condition or obligation under this Lease (other than those set forth in Sections 2601(a) through (g) above and Sections 2601(i) through (k) below) within thirty (30) days after written notice and demand by Landlord, unless the failure is of such a character as to require more than thirty (30) days to cure, in which event it shall be an Event of Default upon Tenant's failure to commence and proceed diligently to cure such default within such thirty (30) day period;

(i)      Any occurrence that is deemed an Event of Default elsewhere in this Lease;

(j)      If Tenant shall be given four (4) notices of the same, material default under this Section 2601 within any period of eighteen (18) months, notwithstanding any subsequent cure of the failure to perform or observe the terms or conditions of this Lease as identified in such notices; and

(k)      The dissolution of Tenant.

**2602.    Remedies.**  Upon the occurrence of an Event of Default:

(a)      Landlord may terminate this Lease and/or any services provided to Tenant under this Lease, by giving notice of such termination to Tenant, whereupon this Lease shall automatically cease and terminate, and Tenant shall be obligated to immediately quit the Premises.  Any other notice to quit or notice of Landlord's intention to re-enter the Premises is hereby expressly waived.  If Landlord elects to terminate this Lease, everything contained in this Lease on the part of Landlord to be done and performed shall cease, without prejudice, however, to the right of Landlord to recover from Tenant all Rent accrued up to the time of termination or recovery of possession by Landlord, whichever is later, and any and all other monetary damages and/or loss of and/or deficiency in Rent sustained by Landlord.

(b)      Whether or not this Lease is terminated pursuant to Section 2602(a), Landlord may proceed to recover possession of the Premises under and by virtue of the provisions of the Laws of the state in which the Premises is located, or by such other proceedings, including re-entry and possession, as may be applicable.

(c)      Should this Lease be terminated pursuant to Section 2602(a), or if Landlord recovers possession of the Premises pursuant to Section 2602(b), or if Tenant shall abandon the Premises (whether or not the keys shall have been returned or the Rent shall have been paid) before the Expiration Date without having paid the full Rent for the remainder of the Term, Landlord shall have the option to relet the Premises (or any part thereof, alone or together with other premises) for such rent and upon such terms as Landlord (in Landlord's sole, subjective discretion) may deem advisable and, if the full Rent reserved under this Lease (and the costs, expenses, and damages indicated below) shall not be received by Landlord, Tenant shall be liable for all damages sustained by Landlord, including, without limitation, loss and/or deficiency in Rent, attorneys' fees, brokerage fees, and expenses of placing the Premises in first-class rentable condition(not to exceed the unamortized Allowance which shall be amortized over the initial Term).  Landlord, in putting the Premises in good order or preparing the same for re-rental, may, at Landlord's option, make such alterations, repairs and/or replacements in and to the Premises as Landlord, in its sole discretion, considers advisable for the purpose of reletting the Premises, and the making of such

24

alterations, repairs or replacements shall not operate or be construed to release Tenant from any liability under this Lease. Upon any such re-letting, all rental received by Landlord from such re-letting shall be applied, first, to the payment of any indebtedness other than rent due hereunder from Tenant to Landlord; second, to the payment of any costs and expenses of such re-letting and of any necessary alterations (not to exceed the unamortized Allowance which shall be amortized over the initial Term) and repairs; third, to the payment of rent due and unpaid hereunder; and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same become due and payable hereunder.  In no event shall Tenant be entitled to receive the excess, if any, of such net rent collected over the sums payable by Tenant to Landlord.  Landlord shall in no event be liable in any way whatsoever for failure to relet the Premises or, if the Premises are relet, for failure to collect the rent under such reletting, and in no event shall Tenant be entitled to receive the excess, if any, of such net rent collected over the sums payable by Tenant to Landlord.

(d)     Notwithstanding anything herein to the contrary, Landlord shall have the right, upon written notice to Tenant, to accelerate and recover Rent and other amounts due hereunder for the three (3) month period following delivery of Landlord's acceleration notice, such amounts to be discounted to present value at an assumed discount rate of six percent (6%) per annum.  Upon payment of all sums due hereunder, Tenant shall receive a credit or a rebate at the end of each rental period, against accelerated Rent paid by Tenant hereunder, of any rent actually paid to Landlord by a replacement tenant in a reletting of the Premises during each such three (3) month period.  In addition, Landlord shall continue to be entitled to collect and Tenant shall pay all accrued past due Rent due hereunder in addition to any accelerated Rent collected hereunder.  Upon the expiration of each 3-month period following such acceleration date, Landlord shall be entitled to accelerate and recover Rent and other amounts which will come due for each subsequent three (3) month period, discounted to present value at an assumed discount rate of six percent (6%); provided, however, Landlord shall only be permitted to accelerate Rent pursuant to this Section 2602(d) on three (3) separate immediately consecutive occasions.

(e)     Any damages and/or loss of and/or deficiency in Rent sustained by Landlord may be recovered by Landlord, at Landlord's option: (i) in one (1) or more separate actions, at any time and from time to time, as and to the extent that said damages and/or Rent shall have accrued; or (ii) in a single action deferred until on or after the Expiration Date (in which event Tenant hereby agrees that the cause of action shall not be deemed to have accrued until the Expiration Date), or (iii) in a single proceeding prior to either the time of reletting or the Expiration Date, in which event Tenant agrees to pay Landlord the difference, if any, between (a) the present value of the Rent reserved under this Lease on the date of breach, and (b) the fair market value of the Lease from the date of the breach discounted at eight percent (8%) per annum, the latter remedy hereby acknowledged to be a fair estimation of Landlord's damages and not an unenforceable penalty.

(f)     Nothing contained herein shall prevent the enforcement of any claim Landlord may have against Tenant for anticipatory breach of the unexpired Term.  In the event of a breach or anticipatory breach by Tenant of any of the covenants or provisions hereof, Landlord shall have the right of injunction, the right to specific performance, and the right to invoke any remedy allowed at law or in equity or under this Lease.

(g)     Intentionally deleted.

**2603.     No Waiver of Rights.**  If, under the provisions hereof, a party shall institute proceedings against the other party and a compromise or settlement thereof shall be made, the same shall not constitute a waiver of any other covenant, condition, agreement or obligation contained in this Lease, nor of any of a party's rights under this Lease.  No waiver by a party of any breach of any covenant, condition or agreement contained in this Lease and the Rules and Regulations promulgated hereunder shall operate as a waiver of such covenant, condition, agreement or rule or regulation itself, or of any subsequent breach thereof.  No provision of this Lease shall be deemed to have been waived by a party unless such waiver is in writing and signed by the waiving party.  No endorsement or statement on any check or letter accompanying a check for payment of Rent shall be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Rent and/or to pursue any other remedy provided in this Lease.

**2604.     Landlord Self-Help.**  If Tenant defaults in the making of any payment or in the doing of any act under this Lease required to be made or done by Tenant, then Landlord may, but shall not be required to, make such payment or do such act, and charge the reasonable amount of the expense thereof, if made or done by Landlord, with interest thereon at the Lease Interest Rate.  Such payment and interest shall constitute Additional Rent hereunder due and payable within thirty (30) days of Landlord's demand therefor, but the making of such payment or the taking of such action by Landlord shall not operate to cure such default or to estop Landlord from the pursuit of any remedy to which Landlord would otherwise be entitled at law, in equity or under this Lease.

**2605.     Interest.**  Any sum accruing to Landlord or Tenant under the provisions of this Lease which shall not be paid within ten (10) days of the due date shall bear interest from the date originally due at the Lease Interest Rate.

**2606.     Waiver of Landlord's Lien**.  Landlord shall not have any lien upon any of the property of Tenant in the Premises.

**2607.  Waiver of Redemption.**  Tenant hereby waives and surrenders all rights and privileges which it might have under or by reason of any present or future law to redeem the Premises, or to have a continuance of this Lease for the remainder of the Term after entry of a judgment for possession of the Premises, after being dispossessed or ejected therefrom by process of law or under the terms of this Lease, and/or after the termination of this Lease as herein provided.

**2608.  Cumulative Remedies.**  The specified remedies to which Landlord may resort hereunder are cumulative and are not intended to be exclusive of any remedies or means of redress to which Landlord may at any time be lawfully entitled at law, in equity or under this Lease, and Landlord may invoke any remedy (including the remedy of specific performance) allowed at law, in equity or under this Lease as if specific remedies were not provided for herein.

**2609.  Application of Payments.**  Landlord shall have the right to apply any payments made by Tenant to the satisfaction of any debt or obligation of Tenant to Landlord according to Landlord's sole and absolute discretion and regardless of the instructions of Tenant as to application of any such sum, whether such instructions be endorsed upon Tenant's check or otherwise.

**2610.  Duty to Mitigate.**  Notwithstanding any of the terms and provisions herein contained to the contrary, Landlord and Tenant shall each have the duty and obligation to use reasonable good faith efforts to mitigate any and all damages that may or shall be caused or suffered by virtue of the other's defaults under, or violation of, any of the terms and provisions of this Lease; provided, however, Landlord does not necessarily agree to rent the Premises at its then fair market value in the event it enters into a new lease agreement, but may relet the Premises at a minimum annual rent, taxes and other charges consistent with the prevailing economic conditions to a tenant which is acceptable to Landlord based upon the following criteria: (a) the proposed tenant shall have a tangible net worth (exclusive of good will) equal to or greater than Five Million Dollars ($5,000,000.00); (b) the proposed tenant will be obligated to use the Premises for either the same use as Tenant or another use which in Landlord's reasonable judgment is in accordance with a proper mix of uses for the Shopping Center; and (c) the proposed tenant shall agree to enter into a lease agreement with Landlord which contains terms, covenants and conditions at least as favorable to Landlord as those set forth in this Lease.  The foregoing, however, shall in no way obligate Landlord to relet the Premises in preference to other vacant space in the Shopping Center. The burden of proof as to the reasonableness of a party's efforts shall be borne by the defaulting party in any litigation between the parties

## ARTICLE 27
## LEGAL PROCEEDINGS AND NOTICES

**2701.  Litigation Costs.**  If either party hereto finds it necessary to employ legal counsel or to bring an action at law or other proceedings against the other party to enforce any of the terms, covenants or conditions hereof, the unsuccessful party shall pay to the prevailing party a reasonable sum for attorneys' fees. Attorneys' fees shall include attorneys' fees on any appeal, and in addition, a party entitled to attorneys' fees shall be entitled to all other reasonable costs for investigating such action, taking depositions and the discovery, travel, and all other necessary costs incurred in such litigation.

**2702.  Governing Law.**  This Lease is made pursuant to, and shall be governed by and construed in accordance with, the Laws of the state in which the Premises is located and any applicable local or county Laws.  Should any provision of this Lease require judicial interpretation, it is agreed that the court interpreting or considering same shall not apply the presumption that the terms hereof shall be more strictly construed against the party who itself or through its agent prepared the same since both Landlord and Tenant have had the opportunity to fully negotiate this Lease and to procure and consult with legal counsel of their choosing.

**2703.  Severability.**  If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.  In the event that any provision of this Lease would be deemed unenforceable by virtue of the excessiveness or unreasonableness of any fee, charge, cost or expense for which payment is required thereby, then such provision automatically shall be deemed to be modified to provide that the amount of such fee, charge, cost or expense shall be the maximum amount permitted by law and such provision, as so modified, shall be enforced.

**2704.  Notices.**  Any notice, demand or other communication required or permitted by law or any provision of this Lease to be given or served on either party shall be in writing, addressed to the party at the address set forth in Section 201, or such other address as the party may designate from time to time by notice, and (a) deposited in the United States mail, registered or certified, return receipt requested, postage prepaid, or (b) delivered by a private mail or courier service, delivery charges prepaid, which provides delivery confirmation (such as, without limitation, Federal Express, Airborne or UPS).  Any party shall have the right from time to time and at any time, upon at least ten (10) days' prior written notice delivered pursuant to the terms hereof, to change its respective address and to specify any other address within the United States of America, provided said new address is not a post office box or facsimile number.  All communications delivered, as set forth herein, shall be

deemed received by the addressee on the delivery date, the delivery refusal date, or the undeliverable date, as shown on the return receipt or the delivery confirmation.  The "undeliverable date" shall mean the date the notice was first unsuccessfully attempted.  Notice from an attorney or agent acting or purporting to act on behalf of a party shall be deemed notice from such party if such attorney or agent is authorized to act on behalf of such party.

## ARTICLE 28
## SUCCESSORS AND ASSIGNS

**2801.    Transfer of Landlord's Interest.**  If in connection with or as a consequence of the sale, transfer or other disposition of the Building, or any portion thereof, Landlord ceases to be the owner of the Building or any portion thereof, Landlord shall be entirely freed and relieved from the performance and observance thereafter of all covenants and obligations arising under this Lease on the part of Landlord to be performed and observed from and after the date of such transfer, it being understood and agreed in such event (and it shall be deemed and construed as a covenant running with the land) that the person succeeding to Landlord's ownership of said Building shall, subject to the provisions contained in Sections 2401 and 2404 thereupon and thereafter assume, and perform and observe, any and all of such covenants and obligations of Landlord thereafter accruing while such party is the owner of the Building.  Any Deposits or other security given by Tenant to secure performance of Tenant's obligations hereunder shall be assigned and transferred by Landlord to its successor in interest, and upon such assignment Landlord shall thereby be discharged of any further obligation relating thereto.

**2802.    Multiple Tenants.**  If there shall be more than one party constituting Tenant, they shall all be bound jointly and severally by the terms, covenants, agreements and obligations under this Lease and the word "Tenant" shall be deemed and taken to mean each and every person or party mentioned as a Tenant herein, be the same one or more; and if there shall be more than one party constituting Tenant, any notice required or permitted by the terms of this Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof.  No rights, however, shall inure to the benefit of any assignee, sublessee or other transferee, of Tenant unless the Transfer to such transferee has been approved by Landlord in writing in accordance with this Lease but no approval of a sublease shall be deemed to create a privity or landlord and tenant relationship between Landlord and any subtenant.

**2803.    Binding on Successors and Assigns.**  This Lease and the covenants and conditions herein contained shall inure to the benefit of and be binding upon Landlord, Tenant and their respective successors and assigns; provided, however, no rights shall inure to the benefit of any assignee or successor of Tenant to the extent such assignee or successor acquired any purported interest herein in violation of Article 23.

## ARTICLE 29
## BROKERS AND AGENTS

**2901.    Brokers.**  Each of the parties hereto represents and warrants that, other than the brokerage commission(s) payable by Landlord to Landlord's Agent and the Broker(s) referred to in Section 201 pursuant to a separate agreement(s), there are no other brokerage commissions or finders' fees of any kind due in connection with this Lease, and each of the parties hereto shall indemnify the other against, and hold it harmless from, any and all liabilities, damages, costs, claims and obligations arising from any such claim (including, without limitation, the cost of attorneys' fees in connection therewith).

**2902.    Landlord's Agent.**  The Landlord Agent(s) listed in Section 201 are acting as Landlord's Agent only and shall not in any event be held liable to Tenant for the fulfillment or non-fulfillment of any of the terms, covenants, conditions or obligations of this Lease or for any action or proceedings that may be taken by Landlord against Tenant, or by Tenant against Landlord, including, but not limited to, any such action arising out of, in connection with or in any manner relating to, the performance or nonperformance by Landlord's Agent of any act pursuant to this Lease or Landlord's direction.  Any waiver by Tenant of Landlord's liability under this Lease, including, but not limited to, any waiver of subrogation rights, shall apply with equal force and effect to Landlord's Agent.  Landlord shall have the right to designate a new Landlord's Agent, from time to time, upon notice to Tenant.

## ARTICLE 30
## INTENTIONALLY OMITTED

## ARTICLE 31
## ENVIRONMENTAL COVENANTS AND PROHIBITED MATERIALS

**3101.    No Hazardous Substances and Moisture Infiltration.**  Tenant shall maintain the Premises, and its operations thereon, in compliance with all federal, state and local laws, regulations, ordinances, rules, orders, and agency policies or guidelines regarding the environment, human health or safety ("Environmental Laws") that apply to the Premises or its use, except for items that are Landlord's responsibility under Section 1502(b).  Tenant shall not store or use hazardous substances or wastes, toxic substances or wastes, pollutants, or contaminants as those terms are defined by Environmental Laws,

27

including but not limited to "hazardous substances" as defined under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) (42 U.S.C. §§ 9601 et seq.); "hazardous wastes" as defined under the Resource Conservation and Recovery Act (RCRA) (42 U.S.C. §§ 6901 et seq.); "toxic substances" as defined under the Toxic Substances Control Act (TSCA) (15 U.S.C. §§ 2601 et seq.); "hazardous materials" as defined under Occupational Safety and Health Administration (OSHA) laws and regulations; oil, petroleum products, or their derivatives; and PCBs, asbestos, explosives, radioactive materials and any other toxic, reactive, ignitable, corrosive or otherwise hazardous substances (hereinafter "Hazardous Substances"). Tenant shall cure any spill, leak, discharge, or other release by any Tenant Parties from, on, about, or under the Premises. Tenant shall not install any underground or aboveground storage tanks on the Premises without Landlord's prior written permission, which may be withheld in Landlord's sole discretion. Tenant shall give Landlord written notice immediately upon Tenant's knowledge of any Hazardous Substances existing in the Building that impacts soil, groundwater, or surface water, or requires notification of regulators. At any time, and from time to time, prior to the expiration or earlier termination of the Term, Landlord shall have the right to (i) inspect any of Tenant's environmental records with respect to the Premises, and (ii) conduct appropriate tests and site investigations of the Premises to determine whether contamination has occurred as a result of Tenant's occupancy of the Premises. Tenant shall promptly notify Landlord of any moisture (or toxic mold) conditions that it discovers inside the Premises. If such conditions were caused by components of the Premises for which Tenant is responsible, then Tenant shall promptly remediate such conditions in accordance with Environmental Laws, including, without limitation, any OSHA laws, regulations, policies, or guidelines. See Section 902(i) for Tenant's obligation to carry Environmental Legal Liability insurance.

**3102.    Failure to Cure.**  Notwithstanding the expiration or earlier termination of this Lease, if upon the expiration or earlier termination of this Lease there exists a violation of Environmental Laws at the Premises for which Tenant is liable or if Tenant has failed to fulfill its obligations under this Article 31, and if such violation or failure delays another tenant from commencing its work or operations at the Premises, Tenant shall reimburse Landlord for Landlord's lost rental plus the amount required for Landlord to cure the violation of Environmental Laws and/or to cure Tenant's default by fulfilling Tenant's obligations under this Lease, if possible.

**3103.    Tenant Indemnification.**  Tenant shall indemnify, defend and hold Landlord and the Landlord Indemnitees harmless from any and all fines, suits, procedures, claims, liabilities, costs and actions of any kind, including counsel fees (including those incurred to enforce this indemnity or for any other purpose) arising out of or in any way related to (1) the Tenant's (or Tenant Related Parties') use, handling, generation, treatment, storage, disposal, and other management or Release of any Hazardous Substances from, on, about or under the Building or the Premises, whether or not the Tenant (or Tenant Related Parties) may have acted negligently with respect to such Hazardous Substances; or (2) the Tenant's (or Tenant Related Parties') failure to comply with the provisions of Article 31 of this Lease. Tenant's obligations and liabilities under this Article 31 shall survive the expiration or earlier termination of this Lease, and shall continue for so long as Landlord (including any successor or assignee) remains responsible or liable under Environmental Laws or otherwise for either any Releases of Hazardous Substances or for any violations of Environmental Laws caused by the Tenant Parties. Tenant's failure to abide by the terms of this Article 31 shall be enforceable by injunction.

**ARTICLE 32**
**APPROVALS**

**3201.    Standards.**  Except as otherwise expressly set forth in this Lease, any discretionary action or decision or approval or consent requested or required of Landlord under this Lease may be made, granted or denied by Landlord in its sole, absolute and unfettered discretion.

**3202.    No Plan Approval Liability.**  Neither approval of the Tenant's Plans and Sign Plans by the Landlord Parties, nor any other inspections or approvals of the improvements on the Building or plans for construction thereof by Landlord Parties shall constitute a warranty or representation as to the technical sufficiency, adequacy or safety of the plans, structures, any of their component parts, or any other physical condition or feature pertaining to the improvements, it being acknowledged by Tenant that the Landlord Parties have made such approvals solely for determining and protecting the value of Landlord's property for internal purposes, and not as an expert in construction-related matters.

**ARTICLE 33**
**LIABILITY OF LANDLORD**

**3301.    Limitation of Landlord Liability.**  Notwithstanding anything to the contrary, Tenant shall neither assert nor seek to enforce any claim, and hereby waives any and all rights to assert or claim, for breach of this Lease against any of Landlord's assets other than Landlord's interest in the Building, or any portion thereof, including  rents and insurance proceeds, and Tenant shall look solely to such interest for the satisfaction of any liability of Landlord under this Lease, it being specifically agreed that in no event shall Landlord or Landlord's Indemnitees (or any of Landlord's or Landlord's Indemnitees' officers, trustees, directors, partners, beneficiaries, joint venturers, members, stockholders, or other principals or representatives,

S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

disclosed or undisclosed) ever be personally liable for any such liability.  This Section shall not limit any right that Tenant might otherwise have to obtain injunctive relief against Landlord.  Notwithstanding anything to the contrary, in no event shall Landlord (or any of Landlord's officers, trustees, directors, partners, beneficiaries, joint venturers, members, stockholders, or other principals or representatives, disclosed or undisclosed) ever be liable for consequential, speculative, or punitive damages, or lost profits.

### ARTICLE 34
### ENTIRE AGREEMENT AND MISCELLANEOUS

**3401.     Entire Agreement.** This Lease is intended by the parties to be a final expression of their agreement and a complete and exclusive statement of the terms thereof. All of the agreements, conditions, covenants, terms, warranties, promises, understandings, obligations, limitations, representations, and provisions concerning the leasing of the Premises and/or the Tenant's occupancy in the Building are expressly contained in this Lease, and none shall be implied. Other than those expressly provided for in this Lease, Landlord or Landlord's Indemnitees have not made, and Tenant Parties have not relied upon, any representations, covenants, agreements, warranties, promises or statements, including, without limitation, with respect to estimated gross sales and common area maintenance calculations, any other financial matters, and any matters related to: (i) the Premises, (ii) any other premises in the Building; (iii) the Building; (iv) past, present or future tenancies, rents, expenses, operations, or (v) any other matter. Except as expressly provided herein, this Lease may be amended, modified or terminated only by subsequent written agreement between the Landlord and Tenant.

**3402.     Relationship of Parties.** Nothing contained in this Lease shall be deemed or construed to create a partnership or joint venture of or between Landlord and Tenant, or to create any other relationship between the parties hereto other than that of landlord and tenant.

**3403.     Time is of the Essence.** Time shall be of the essence in the performance of all obligations under this Lease.

**3404.     Exhibits.** The Exhibits attached hereto (or contemplated to be completed and attached to this Lease within the time periods specified in this Lease) are hereby made a part of this Lease as fully as if set forth in the text of this Lease. Unless expressly set forth to the contrary in this Lease, any site plans or tenant lists set forth in this Lease or in Exhibits to this Lease are not intended, in any way, to constitute a representation or warranty by, or on behalf of, Landlord or Landlord's Indemnitees (a) as to the past, current or future layout of the Building or (b) as to the past, existing or future tenants or occupants in the Building.

**3405.     Compliance with Laws.** Tenant, at its sole expense, shall comply, and shall cause the Premises to comply, with all Laws that shall impose any duty upon Landlord or Tenant with respect to or arising out of Tenant's use or occupancy of the Premises, except for items that are Landlord's responsibility under Section 1502(b); provided, however, Tenant shall not be required to comply with any such Laws for which it would otherwise be responsible, if the same have been imposed or are applicable as a result of the negligence of the Landlord Parties, or Landlord's failure to comply with any of its obligations under this Lease and in such event Landlord shall comply with such Laws,.

Notwithstanding the foregoing, Landlord shall, at its own cost and expense, comply with all Laws in force, or which may hereafter be in force, which affect items that are Landlord's responsibility under Section 1502(b); provided, however, Landlord shall not be required to comply with any such Laws for which it would otherwise be responsible, if the same have been imposed or are applicable as a result of the negligence of the Tenant Parties, Tenant's particular use of the Premises, Tenant's failure to make repairs required of Tenant hereunder, alterations or improvements made by Tenant, or Tenant's failure to comply with any of its obligations under this Lease and in such event Tenant shall comply with such Laws.

Each party shall reimburse and compensate the other for all expenditures made by, or damages or fines sustained or incurred by, a party due to nonperformance or noncompliance with or breach or failure of the other party to observe an item, covenant, or condition of this Lease upon the other party's part to be kept, observed, performed or complied with. If a party receives notice of any violation of any Laws applicable to the Premises, it shall give prompt notice thereof to the other party.

**3406.     Rule Against Perpetuities.** Notwithstanding any provision in this Lease to the contrary, if the Term has not commenced within twenty-one (21) years after the Date of Lease, this Lease shall automatically terminate on the 21st anniversary of the Date of Lease.  The sole purpose of this provision is to avoid any possible interpretation of this Lease as violating the Rule Against Perpetuities or other rule of law against restraints on alienation.

**3407.     Gender and Number.** Masculine, feminine or neuter pronouns shall be substituted for one another, and the plural shall be substituted for the singular number, in any place or places herein in which the context may require such substitution.

29

**3408.     Captions.**  Any headings preceding the text of the several Articles, Sections and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Lease, nor shall they affect its meaning, construction or effect.

**3409.     Counterparts.**  This Lease may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same document. This Lease may also be executed in duplicate, each of which shall be deemed an original.

**3410.     Third Parties.**  No term or provision of this Lease is intended to be, nor shall be, for the benefit of any Person not a party hereto, and no such other Person shall have any right or cause of action under this Lease.

**3411.     Lease Interpretation.**  The obligations of Landlord and Tenant, respectively, under this Lease are expressly agreed by the parties to be independent covenants. The term "including", as used in this Lease, shall mean in each instance "including, without limitation" and the listed items following such term shall be construed to be exemplary and not exhaustive.

**3412.     Execution of Lease.**  The submission of this Lease to each of Landlord and Tenant shall be for examination and negotiation purposes only, and does not and shall not constitute a reservation of or an obligation of Tenant to lease, or an offer to Tenant to lease, or otherwise create any interest of Tenant in, the Premises or any other premises situated in the Building unless and until this Lease is fully executed and delivered by Tenant and Landlord.  Specifically, neither party hereto shall have any obligation or liability to the other whatsoever at law or in equity (including any claims for detrimental reliance, partial performance, good faith or promissory estoppel or other similar types of claims) unless and until such time as both parties shall have executed and delivered the Lease.  This Section supersedes all other conflicting verbal understandings or agreements or language set forth in this Lease.

**3413.     Intentionally Deleted.**

**3414.     Counterclaims.**  Tenant shall not impose any counterclaim or counterclaims in summary proceeding or other action brought by Landlord based on failure to pay Rent, holding over or breach of Lease except to the extent that Tenant's failure to make such claim in such proceeding or action would, as a matter of law, preclude Tenant from raising such claim in any other proceeding or forum.

**3415.     Force Majeure.**  If either party hereto shall be delayed or hindered in or prevented from the performance of any non-monetary act by Force Majeure, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. The provisions of this Section shall not operate to excuse Tenant from the prompt payment of Rent or any other payments required by the terms of this Lease and shall not operate to delay or extend the Term. "Force Majeure" means a material delay beyond the reasonable control of the delayed party caused by labor strikes, lock-outs, industry-wide inability to procure materials, extraordinary restrictive governmental laws or regulations (such as gas rationing), mass riots, war, military power, terrorist acts, sabotage, material fire or other material casualty, Severe Weather, or an extraordinary and material act of God (such as a tornado or earthquake), but excludes inadequacy of insurance proceeds, litigation or other disputes, financial inability, lack of suitable financing, delays of the delayed party's contractor and failure to obtain approvals or permits unless otherwise caused by an event of Force Majeure. Delays or failures to perform resulting from lack of funds shall not be deemed delays beyond the reasonable control of a party. "Severe Weather" means weather that a reasonable person would find unusual and unanticipated at the time of the scheduling of the activity based on recent weather patterns for the period in question in the vicinity of the Premises, provided that the delayed party delivers to the other party, upon request, reasonable documentation from an unbiased weather authority substantiating such claim.

**3416.     Anti-Terrorism and Money Laundering Representation and Indemnification.**  Tenant certifies that: (i) neither it nor its officers, directors, or controlling owners is acting, directly or indirectly, for or on behalf of any "SDN" (as hereinbelow defined); (ii) neither it nor its officers, directors or controlling owners is engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any SDN; and (iii) neither it nor its officers, directors or controlling owners is in violation of Presidential Executive Order 13224, the USA Patriot Act, the Bank Secrecy Act, the Money Laundering Control Act or any regulations promulgated pursuant thereto. Tenant hereby agrees to defend, indemnify, and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorneys fees and costs) arising from or related to any breach of the foregoing certification. Should Tenant, during the Term, be designated an SDN, Landlord may, at its sole option, terminate this Lease.  "SDN" means any person, group, entity, or nation named by any Executive Order, the United States Department of Justice, or the United States Treasury Department as a terrorist, "Specially Designated National or Blocked Person", or other banned or blocked person, entity, nation, or transaction pursuant to any law, order, rule or regulation that is enforced or administered by the Office of Foreign Assets Control.

S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

## ARTICLE 35
## SPECIAL PROVISIONS

3501. Waiver of Jury Trial. TO INDUCE LANDLORD AND TENANT TO ENTER INTO THIS LEASE, LANDLORD AND TENANT EACH HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY OF ANY OR ALL ISSUES CLAIMS, CAUSES OF ACTION AND/OR IN ANY ACTION OR PROCEEDING BETWEEN LANDLORD, TENANT AND GUARANTOR OR THEIR SUCCESSORS, ASSIGNS, PERSONAL OR LEGAL REPRESENTATIVES AND HEIRS UNDER OR IN CONNECTION WITH THIS LEASE, ANY OF THE PROVISIONS HEREOF, THE GUARANTY, AND/OR TENANT'S USE AND/OR OCCUPANCY OF THE PREMISES. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY LANDLORD AND TENANT, AND LANDLORD AND TENANT EACH ACKNOWLEDGE THAT NEITHER LANDLORD NOR TENANT NOR ANY PERSON ACTING ON BEHALF OF LANDLORD OR TENANT HAS MADE ANY REPRESENTATIONS OF FACT OR LAW TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. LANDLORD AND TENANT EACH FURTHER ACKNOWLEDGE THAT HE, SHE OR IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS LEASE AND THIS WAIVER WITH LEGAL COUNSEL.

IN WITNESS WHEREOF, the parties hereto intending to be legally bound have executed this Lease under their respective seals as of the day and year first above written.

WITNESS:                                 LANDLORD:
                                         1065 WISC LLC, a Delaware limited liability company


_Suzanne E. Walsh_                       By: _John D. Rotha_ _____ (SEAL)
                                         Name: _Adam Roffman_
                                         Title: _Managing Partner_

WITNESS:                                 TENANT:
                                         THE CANDLE BAR STORES, LLC, a Tennessee limited liability company, d/b/a "The Candle Bar"

_Danelle Wood_

                                         By: _Jimmy West_ _____ (SEAL)
                                         Name: _Jimmie West_
                                         Title: _Vice President_
                                         Federal Tax ID #: _83-1232424_

31

**EXHIBIT A**
**TO**
**LEASE**

**Premises**



Electric Room

Premises

**EXHIBIT B**
**TO**
**LEASE**

**<u>Rules and Regulations</u>**

A.       Tenant shall be obligated to do the following:

(i)        Keep the Premises, including all exterior surfaces and both sides of all glass clean, orderly and sanitary;

(ii)       Keep the outside areas adjacent to the Premises clean, orderly and free of ice and snow, rubbish, obstructions and merchandise;

(iii)      Display the certificate of occupancy for the Premises in the Premises (if required by applicable law) and provide Landlord with a copy of the certificate of occupancy for the Premises;

(iv)      Keep the Premises free of garbage and trash and remove the same from the Premises to containers approved by Landlord;

(v)       Maintain the Premises free of insects, rodents, vermin and other pests;

(vi)      Keep all mechanical apparatus free of vibration and noise;

(vii)     Procure and maintain at its sole cost and expense any permits and licenses required in the transaction of Tenant's business;

(viii)    Conduct its business in all respects in a dignified manner in accordance with the high standards of first-class store operations;

(ix)      Load and unload goods at such times in the areas and through such entrances as may be designated by Landlord;

(x)       Maintain the temperature in the Premises to prevent freezing of plumbing lines and fixtures;

(xi)      If the Premises connects to a climate controlled interior mall, operate heating and cooling equipment to maintain store temperature between 68°F and 74°F in the winter and between 72°F and 78°F in the summer, or in accordance with the then prevailing government regulations respecting minimum and maximum winter and summer store temperatures;

(xii)     Keep its show windows dressed, using only professionally prepared signage which must be submitted to Landlord for approval prior to installation;

(xiii)    Keep its show windows and exterior signs illuminated from dusk to 10:00 p.m. every day;

(xiv)    Keep the Premises open during the hours prescribed in Section 201; and

(xv)     Subject to Section 1301, abide by all Rules and Regulations set forth in this **<u>Exhibit B</u>** as may be changed by Landlord from time to time.

B.       Tenant agrees not to do the following:

(i)        Display any sign visible outside the Premises without first having obtained Landlord's written permission;

(ii)       Use the Premises or any other part of the Building for any Prohibited Use;

(iii)      Cause the accumulation of garbage, trash, rubbish or refuse in the Premises or the Building;

(iv)      Display or store merchandise outside the Premises;

(v)       Distribute hand bills or other advertising matter or solicit business in the Common Area;

(vi)      Attach any awning, antenna, or other projection to the roof or the outside walls of the Premises or the building of which the Premises are a part;

(vii)     Use or permit the use of objectionable advertising mediums such as loud speakers or other mediums that irritate or have the tendency to irritate other tenants within the Building or their customers or invitees.

**EXHIBIT C**
**TO**
**LEASE**

**Construction**

I.        **Landlord's Work.**  Except for the items specifically listed below, Tenant expressly acknowledges and agrees that it is obligated to accept the Premises in their current "as is" condition:

LANDLORD SHALL CONSTRUCT THE ENTRYWAY/VESTIBULE SERIVNG THE PREMISES.  IN ADDITION, LANDLORD WARRANTS THAT, TO LANDLORD'S ACTUAL KNOWLEDGE AS OF THE DATE OF LEASE, NO ELEVATOR IS REQUIRED BY APPLICABLE LAW FOR ACCESS TO THE PREMISES.   SHOULD A CHANGE IN APPLICABLE LAW OCCUR AFTER THE DATE OF LEASE THAT REQUIRES AN ELEVATOR TO SERVE THE PREMISES, TENANT SHALL HAVE THE RIGHT TO TERMINATE THIS LEASE IF LANDLORD DOES NOT ELECT TO INSTALL ANY ELEVATOR REQUIRED BY APPLICABLE LAW, AT LANDLORD'S SOLE COST AND EXPENSE.

II.       **Tenant's Work.**  Except for those items specifically set forth above as Landlord's Work, Tenant, at Tenant's expense, shall furnish and install all improvements, equipment, and fixtures to the Premises necessary for Tenant in order to prepare the Premises for the opening and continued operation of Tenant's business.

Tenant's construction shall comply with applicable Laws, including fire, health or safety codes.  Where conflict exists, federal, local and state codes and ordinances shall govern.

All required permits for Tenant's Work shall be obtained and fees paid therefor by Tenant.  Tenant will obtain, at Tenant's expense, a Certificate of Occupancy prior to opening for business and Tenant will provide Landlord with a copy of the final Certificate of Occupancy.

**EXHIBIT C-1**
**TO**
**LEASE**

**Allowance**

      Provided there is no Event of Default under this Lease, Landlord and Tenant hereby agree that Landlord shall pay to Tenant an amount equal to Sixty-Six Thousand Six Hundred Thirty Dollars ($66,630.00) (hereinafter, "Allowance").  The foregoing Allowance represents Landlord's entire contribution toward work required by Tenant to open for business in the Premises. Notwithstanding anything contained herein, the amount of Landlord's contribution shall not exceed the documented costs of Tenant's Work.

      The Allowance will be paid by Landlord to Tenant within thirty (30) days after the last of the following occurs:

      (i)      Tenant or its general contractor certifies in writing to Landlord, and Landlord approves such certification, that one hundred percent (100%) of the Tenant's Work, as described in this Lease, is completed, and 100% of such Tenant's Work is actually completed;

      (ii)      Tenant submits to Landlord copies of all invoices evidencing Tenant's actual construction costs pertaining to such work;

      (iii)      Tenant provides Landlord with appropriate releases of liens (in the form attached hereto as Schedule I) executed by all applicable suppliers, materialmen, contractors and subcontractors;

      (iv)      Tenant, or its general contractor, provides Landlord with an affidavit (in the form attached hereto as Schedule II) specifying (a) the names of all contractors, subcontractors, suppliers and materialmen who provided or supplied labor, services, goods and materials to the Premises, and (b) that all listed contractors, subcontractors, suppliers and materialmen have been paid in full for the labor, services, goods and materials provided or supplied to the Premises as of the date of the affidavit;

      (v)      Tenant provides Landlord with a copy of Tenant's certificate of occupancy and/or such other document as may be required by the applicable governmental agency in order for Tenant to operate in the Premises;

      (vi)      Tenant actually opens the Premises for business to the general public in compliance with this Lease; and

      (vii)      Tenant has paid the first month's installment(s) of Rent and is current.

      If Tenant has not requested payment one hundred eighty (180) days after Tenant opens for business at the Premises, then the Allowance will no longer be due or payable.

      Landlord at its sole option hereby retains the right to issue two-party checks to Tenant and the contractors, subcontractors, suppliers or materialmen to whom Tenant owes funds.

      Under no circumstances shall this Lease be construed to confer upon any third person or entity any right or cause of action against the Landlord or Tenant, including, but not limited to, all contractors, subcontractors, suppliers, laborers or materialmen.

      Landlord and Tenant recognize and agree that any improvements constructed from the proceeds of the foregoing Allowance are deemed to be owned by the Tenant not Landlord and such Allowance is not intended to be a "qualified lessee construction allowance" as defined in Reg. Sec. 1.110-1(b) of the Internal Revenue Code.

      If Landlord does not pay the Allowance within thirty (30) days following the date such Allowance is due hereunder, Tenant shall have the right to offset the unpaid Allowance from the Rent, together with interest thereon at the Lease Interest Rate, until such amounts are fully recouped.

SCHEDULE I

FINAL RELEASE AND WAIVER OF LIENS

We, the undersigned, are general contractor or subcontractors, materialmen, or other persons furnishing services or labor or materials, as indicated under our respective signatures below, in the construction or repair of improvements upon real estate owned by Landlord and described as follows:

In exchange for payment in the amount of _____, the sufficiency of which is hereby acknowledged, we do hereby, for ourselves, our employees, our subcontractors and materialmen, and all other persons acting for, through or under us, waive, relinquish and release, all right to file or to have filed or to maintain any mechanics' lien or liens or claims against the said building or buildings and appurtenant facilities and structures and real property appurtenant thereto.  This Release and Waiver is executed and given in favor of and for the benefit of each and every party legally or equitably, now or hereafter, owning an interest in the subject property and to any party who has made or who in the future makes a loan on said real property and improvements and his, hers, its or their successors and assigns (collectively, the "Owner") and we do further warrant that we have the full right to execute this Release and Waiver and to bind the parties on whose behalf we have affixed our signatures below.  This Release and Waiver of Liens shall be an independent covenant and shall operate and be effective as well with respect to work and labor done and materials furnished under any supplemental contract or contracts, whether oral or written, for extra or additional work, and for any other and further work done or materials furnished at any time with respect to the subject property subsequent to the execution of this Release and Waiver.

All of the undersigned respectively warrant that all subcontractors and laborers employed by them upon the aforesaid premises have been fully paid and that none of such subcontractors or laborers have any claim, demand, or lien against said premises; and further, that no chattel mortgage, conditional bill of sale or retention of title agreement has been given or executed by any contractor or other party or any of us, for or in connection with any material, appliances, machinery, fixtures, or furnishings placed upon or installed in the aforesaid premises by any of us, other than:

_____

_____

It is understood and agreed that any and all signatures below are for all services rendered, work done and material furnished previously and in the future by the undersigned in any and all capacities, and are not understood to be only for the particular item against which the signature is affixed.  This waiver and release is specifically made for the benefit of the Landlord, and may be relied upon unconditionally by the Landlord.

PAGE TWO OF SCHEDULE I - FINAL WAIVER OF LIENS

Witness the following signatures and seals this __ day of _____, 20__.


(TYPE OF SERVICES, LABOR OR          "Firm"
 MATERIAL FURNISHED)                 _____


                                     By: _____
                                     Name:_____
                                     Title: _____

        ********************************************************

STATE OF _____)
                            ) ss:
COUNTY OF _____)


        I, _____, a Notary Public for said County and State, do hereby certify that
personally appeared before me this day and acknowledged that due execution of the foregoing instrument.

        Witness my hand and notarial seal this ___ day of _____, 20__.


                        _____
                        Notary Public

[Notarial Seal]         My Commission Expires: _____


S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

SCHEDULE II

AFFIDAVIT

_____, being duly sworn according to law, deposes and states that he is the _____ of _____, that s/he is executing this agreement on behalf of _____, and that the following facts are true and correct to the best of his/her knowledge, information and belief:

1.    Attached hereto as Schedule A is a true and correct list of all contractors, subcontractors, materialmen and other parties who have furnished labor, services, goods or materials in the construction, installation, modification and repair of improvements commonly known as the _____, located at _____, , _____, _____;and

2.    That all of the parties listed on Schedule A have been paid in full for all labor, services, goods or materials utilized in the construction, installation, modification and repair of improvements commonly known as , except for the monies owed to those parties, if any, listed in Schedule B attached hereto.

Further Affiant Sayeth Not.

"Firm"

_____

By: _____
Name:_____

Title:_____

*********************************************************

STATE OF _____)
                                 ) ss:
COUNTY OF _____)

I, _____, a Notary Public for said County and State, do hereby certify that personally appeared before me this day and acknowledged that due execution of the foregoing instrument.

Witness my hand and notarial seal this ___ day of _____, 20___.

_____
Notary Public

[Notarial Seal]          My Commission Expires:_____

Schedule A to Schedule II

Schedule B to Schedule II

**EXHIBIT D**
**TO**
**LEASE**

**Intentionally Deleted**

**EXHIBIT E**
**TO**
**LEASE**

**<u>Prohibited Uses</u>**

Tenant shall not use or permit the use of the Premises for any other business or purpose, except as set forth in Section 201(c) of this Lease and in strict accordance with the Rules and Regulations.  No part of the Premises shall be used for any purpose other than retail sales and/or services, offices, restaurants or other commercial purposes which are permitted by applicable zoning and other Laws and which are typically found in first class retail buildings in the county in which the Building is located.  No part of the exterior shall be used for an automatic teller machine.  No part of the Premises shall be used in a way that endangers the health or safety of any user of the Building.  **THE PROHIBITIONS AND RESTRICTIONS SHALL NOT BE DEEMED TO APPLY TO LANDLORD, BUT ONLY TO TENANT UNDER THIS LEASE.**  Landlord shall have the right, in Landlord's sole and absolute discretion, to waive all or any of the prohibitions set forth herein upon such matters, terms and conditions as Landlord, in its sole discretion, may determine.

The Premises, in whole or in part, shall not be used or operated directly or indirectly for any of the following:

The sale of Mediterranean cuisine.

S:\Cascade Realty\1065 Wisonsin Avenue\Candle Bar Store\Leasev6(from T).docx

**EXHIBIT F**
**TO**
**LEASE**

<u>**Guaranty**</u>

In order to induce 1065 WISC LLC, a Delaware limited liability company ("Landlord") to execute and deliver that certain Lease (the "Lease") between Landlord and THE CANDLE BAR STORES, LLC, a Tennessee limited liability company, d/b/a "The Candle Bar" ("Tenant") for the Premises which contains 2,111 square feet of gross leasable area (as the same may be altered, expanded, reduced) in the building located at 1065 Wisconsin Avenue NW, Washington, DC 20007 ("Building"), and in consideration thereof, the undersigned, DESIGNWORKS INVESTMENTS LLC, a Tennessee limited liability company ("Guarantor"), hereby unconditionally, absolutely and irrevocably guarantees to Landlord, and its successors and assigns, the prompt and full payment and performance by Tenant of each and every item, covenant, condition, provision and obligation to be paid, kept, observed or performed by Tenant under the Lease, together with any and all costs and expenses, including reasonable attorneys' fees, which may be incurred by Landlord in connection with any default by Tenant under the Lease or enforcing the Lease and/or this Guaranty (collectively the "Obligations").  Guarantor expressly acknowledges that he, she or it has reviewed the Lease and understands the same.  If there is more than one Guarantor, the terms and conditions of this Guaranty shall apply to all Guarantors, and they shall all be jointly and severally liable for all obligations.  The liability of Guarantor is coextensive with that of Tenant and also joint and several, and legal action may be brought against Guarantor and carried to final judgment either with or without making Tenant or any assignee or successor thereof as a party thereto.

The undersigned further covenants and agrees that Landlord may at any time or from time to time, in its sole and absolute unfettered discretion, without notice to the undersigned:

(a)  Extend or change the time of payment of amounts required to be paid by Tenant under said Lease, and/or the manner, place or terms of performance or observance of any of the terms, covenants, conditions, provisions or obligations to be kept, observed or performed by Tenant under the Lease; and/or

(b)  Modify any of the terms, covenants, conditions or provisions of the Lease, and/or waive compliance with any of the terms, covenants, conditions, provisions or obligations under the Lease.

Payment by the undersigned under this Guaranty is to be made without requiring any proceedings to be taken against Tenant for the collection of any amounts owed by Tenant under the Lease or for the keeping, performing or observing of any of the terms, covenants, conditions, provisions or obligations to be observed by Tenant under the Lease.  The undersigned hereby completely and fully waives (a) notice of acceptance of this Guaranty, (b) presentment for payment, (c) notice of dishonor or default of Tenant under the Lease, (d) protest and notice of protest thereof, (e) any right of setoff, recoupment, counterclaim, abatement or deduction against amounts due under this Guaranty, (f) the right to interpose all substantive and procedural defenses of the law of guaranty, indemnification and suretyship, except the defenses of prior payment or prior performance, and (g) the benefit of any statute of limitations affecting Guarantor's liability under this Guaranty.

Without limiting the generality of the foregoing, the liability of the undersigned under this Guaranty shall not be deemed to have been waived, released, discharged, terminated, impaired or affected by (a) reason of any waiver or failure to enforce or delay in enforcing any of the Obligations, or (b) the granting of any indulgence or extension of time to Tenant, including but not limited to the payment of Rent or for the performance of any of the obligations of the Tenant or forbearance or delay on the part of the Landlord to enforce any of the provisions, covenants, terms, agreements, conditions or stipulations of the Lease, or (c)  the assignment of the Lease, or the subletting of the Premises by Tenant, with or without Landlord's consent, or (d) the expiration of the Term of the Lease, or (e) Tenant's holding over beyond the Term of the Lease, or (f) any merger or reorganization or the release or discharge of Tenant or any other guarantor in any voluntary or involuntary receivership, bankruptcy, winding-up or other creditors' proceedings, or (g) the rejection, disaffirmance or disclaimer of the Lease by any party in any action or proceeding, or (h) the release of any collateral held for the Obligations, or (i) any defect or invalidity of the Lease, or (j) the transfer by Guarantor of any or all of the capital stock of Tenant.  The liability of the Guarantor shall not be affected by any repossession, re-entry or re-letting of the Premises by Landlord, provided, however, that the net payments received by Landlord after deducting all costs and expenses of repossession and/or reletting the same (including, without limitation, any attorney fees, brokerage fees and any reasonable costs or expenses incurred in redecorating, remodeling, or altering the Premises for reletting) as provided in the Lease shall be credited from time to time by Landlord to the account of Tenant and Guarantor and Guarantor shall pay any balance owing to Landlord from time to time, immediately upon being given written notice of demand by Landlord in the manner for providing notice set forth in the Lease.

If Tenant hold over beyond the term of the Lease, Guarantor's obligations hereunder shall extend to such holdover period and apply with respect to the full and faithful performance and observance of all of the covenants, terms, and conditions of the Lease and of any modification thereof.

This Guaranty shall be binding upon the undersigned, and all successors, assigns, personal or legal representatives and heirs, and shall inure to the benefit of Landlord and Landlord's successors and assigns.  The undersigned hereby consents and agrees that this Guaranty may be assigned by Landlord, without recourse, in connection with any sale or assignment by Landlord of part or all of its interest in the Building in which the Premises under the Lease are contained.

This Guaranty shall remain in full force and effect until the payment and/or performance of all of the Obligations and all other amounts payable under this Guaranty (whether or not the Lease shall have been terminated).  Until the payment and/or performance of all of the Obligations and all amounts payable under this Guaranty, Guarantor: (a) shall have no right of subrogation against Tenant by reason of any payments or acts of performance by the Guarantor in compliance with the obligations of the Guarantor under this Guaranty; (b) waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor under this Guaranty; and (c) subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to the Landlord under the Lease.

The terms, covenants, provisions, conditions and obligations contained in this Guaranty may not be waived, changed, modified, discharged, terminated or abandoned, except by agreement in writing, signed by Landlord and Guarantor.  Guarantor agrees that it will, from time to time, within twenty (20) days after Landlord's request, execute and deliver a statement certifying that this Guaranty is unmodified and in full force and effect.  Guarantor hereby constitutes and appoints Landlord its true and lawful attorney-in-fact in Guarantor's name (which power of attorney shall be deemed irrevocable and a power coupled with an interest) to execute such statement if Guarantor shall fail to do so within such twenty (20)-day period.

All notices or other communications to be provided pursuant to this Guaranty shall be in writing and shall be deemed to be properly served if sent by Federal Express or similar courier service with overnight delivery, or by professional messenger service (with receipt therefor) or by certified or registered mail, return receipt requested, (i) if to Landlord, c/o Cascade Realty Partners, LLC, 7600 Wisconsin Avenue, Suite 650, Bethesda, Maryland 20814, and (ii) if to Guarantor, at the address set forth below.  All notices or other communications to be provided pursuant to this Guaranty sent by certified or registered mail, return receipt requested, first-class postage prepaid shall be deemed effective when they are mailed, otherwise such notices or other communications shall be effective upon receipt.

**Waiver of Jury Trial.  GUARANTOR HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY OF ANY OR ALL CLAIMS, CAUSES OF ACTION AND/OR ISSUES IN ANY ACTION OR PROCEEDING BETWEEN LANDLORD AND GUARANTOR OR THEIR SUCCESSORS, ASSIGNS, PERSONAL OR LEGAL REPRESENTATIVES AND HEIRS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY OF ITS PROVISIONS.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LANDLORD NOR ANY PERSON ACTING ON BEHALF OF LANDLORD HAS MADE ANY REPRESENTATIONS OF FACT OR LAW TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  GUARANTOR FURTHER ACKNOWLEDGES THAT HE, SHE OR IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS GUARANTY AND THIS WAIVER WITH LEGAL COUNSEL.**

Notwithstanding anything to the contrary contained herein, provided no Event of Default under the Lease then exists, effective as of the first day of the fourth (4th) Lease Year, Guarantor's liability for Rent hereunder shall not exceed an amount equal to the sum of (i) all Rent due and payable, or which has accrued but as yet has not been billed, under the Lease through the date upon which Tenant has vacated or Landlord has obtained possession of the Premises, and (ii) an amount equal to twelve (12) full calendar months of Rent due and payable or which accrues under the Lease from and after the date upon which Tenant has vacated or Landlord has obtained possession of the Premises, and (iii) all reasonable costs of enforcement of this Guaranty.  If Tenant disputes in good faith a monetary Event of Default, and it is ultimately determined that Tenant owed such amount to Landlord under (i) above, such amount shall decrease the amount for which of Guarantor's is liable under (ii) above.

(Signatures appear on following page)

IN WITNESS WHEREOF, the undersigned has executed this Guaranty under seal effective as of the Date of Lease.

WITNESS:

_Daniel Wood_

**GUARANTOR:**
DESIGNWORKS INVESTMENTS LLC, a Tennessee limited liability company

By: _West_ _____ (SEAL)
Name: _Simone West_ _____
Title: _Vice President_ _____
Federal Tax ID #: _26 - 1927350_

Address: 2934 Sidco Drive, Suite 140
              Nashville, TN  37204

**EXHIBIT G**
**TO**
**LEASE**

## Rider of Additional Lease Provisions

The following special provisions are hereby made a substantive part of this Lease as fully as if set forth within the main text of this Lease:

1.)     <u>Extension Term</u>.

(a)     Landlord hereby grants to Tenant the conditional right, exercisable at Tenant's option, to extend the Term for one (1) period of five (5) Lease Years (the "Extension Option"), exercisable as hereinafter provided.  If properly exercised and if the conditions applicable thereto have been satisfied, the extension term shall commence immediately following the end of the initial Term provided in Section 201(b) of this Lease, and in such event, the extension term (the "Extension Term") shall be deemed to be part of the Term.  The right of extension herein granted to Tenant shall be subject to, and shall be exercised strictly in accordance with, the following terms and conditions.

(b)     Tenant shall exercise the Extension Option with respect to the Extension Term by giving Landlord written notice of the exercise thereof (the "Option Notice") not later than nine (9), nor earlier than fifteen (15), months prior to the expiration of the initial Term.  Time is of the essence as to all dates pertaining to Tenant's exercise of the Extension Option.  If the Option Notice is not given timely or if Tenant does not exercise the Extension Option or if an Event of Default then exists, at Landlord's election, the Option Notice shall be void and Tenant's right of extension with respect to the Extension Option granted hereby shall thereupon and thereafter lapse, terminate and be of no further force or effect.  In no event shall Tenant have the right to extend the Term beyond the expiration of the Extension Term.

(c)     During the Extension Term, all of the terms, conditions, covenants and agreements set forth in this Lease shall continue to apply and be binding upon Landlord and Tenant, except that Minimum Rent shall be as follows:

| Extension Term | Annually | Monthly |
|---|---|---|
| Lease Year 8 | $95,094.84 | $7,924.57 |
| Lease Year 9 | $97,472.28 | $8,122.69 |
| Lease Year 10 | $99,909.00 | $8,325.75 |
| Lease Year 11 | $102,406.80 | $8,533.90 |
| Lease Year 12 | $104,966.88 | $8,747.24 |

(d)     Tenant hereby specifically acknowledges and agrees that the time limitations upon the exercise of the Extension Option will be strictly enforced, that any attempt to exercise the Extension Option at any other time shall be void and of no force or effect, and that if the Extension Option is not exercised within the applicable time period, Landlord intends immediately thereafter to undertake appropriate efforts relating to the marketing or management of the Premises.  The period of time within which the Extension Option may be exercised shall not be extended or enlarged by reason of Tenant's inability to exercise the Extension Option because of any provisions of this Paragraph 1 or for any other reason whatsoever.

2.)     <u>Permits</u>.  Within ten (10) business days after the date Landlord approves Tenant's Plans ("Permit Filing Date"), Tenant shall, at Tenant's own expense, apply for any and all governmental permits, licenses and approvals (collectively, "Permits") required to permit Tenant to commence the performance of Tenant's Work, and thereafter Tenant shall diligently pursue obtaining the Permits.  Tenant shall give Landlord notice of (i) the actual Permit filing date, together with a dated stamped copy of the first page of Tenant's application from the applicable governmental agencies showing the actual Permit filing date, (ii) the date Permits are issued, and (iii) the actual date Tenant obtains its Permits, which notice shall be accompanied by a copy of such Permit. Upon Tenant's written request, Landlord agrees to reasonably cooperate with Tenant, at no cost or expense to Landlord, as may be necessary for Tenant to obtain such Permits, provided Landlord shall not be required to make any changes to the Building or any entitlements thereto in connection with the issuance of the Permits. If Tenant fails to timely submit Tenant's Plans for Landlord's approval, or to resubmit the same within ten (10) days after receiving any comments from Landlord, or if Tenant fails to submit its application for Permits on or before the Permit Filing Date, or if Tenant otherwise fails to diligently pursue its Permits, Section 201(m) of this Lease shall be modified to provide that the Fixturing Period shall be one hundred twenty (120) days after the Lease Commencement Date without regard to Permits. If Tenant has failed to obtain the Permits within ninety (90) days after the Permit Filing Date, Landlord shall have the right, but not the obligation, to pursue the Permits on Tenant's behalf and at Tenant's expense.  If Tenant fails to obtain all Permits

within one hundred fifty (150) days after the Permit Filing Date, Landlord shall have the right at any time thereafter prior to Permits being obtained by Tenant to terminate this Lease by giving notice of such election to terminate; provided, however, Landlord's notice to terminate shall be null and void and this Lease shall continue in full force and effect if Tenant notifies Landlord within ten (10) days after receiving Landlord's termination notice that Tenant has either obtained such Permits or agrees in writing that the Fixturing Period shall commence on the date Landlord's termination notice was given.

3.)     <u>Exclusive Use</u>.

(a)     Landlord shall not hereafter lease any store space within the Building during the Term to a tenant whose primary business within such store space is candle making along with the retail sale of candles or home fragrances ("Exclusive Use").  As used herein, "primary business" means the sale of candle making, candles, and home fragrances such that the gross sales from the sale of candle making, candles, and home fragrances from such tenant's premises exceed twenty-five percent (25%) of all gross sales from the sale of all goods and/or services from such premises in any calendar year.

(b)     Tenant expressly understands that the immediately preceding paragraph does not apply to presently existing leases, or to successors or assigns of tenants under such existing leases or to any lease renewals, expansions, extensions, relocations or replacements of such tenants where Landlord does not have the right to enforce the Exclusive Use.

(c)     Notwithstanding the foregoing, Tenant shall have no remedy for a violation of this Exclusive Use provision if another tenant or occupant in the Building violates a provision of its lease or license agreement regarding its premises, which either does not permit or specifically prohibits such occupant from using its premises in violation of the Exclusive Use as set forth above as long as Landlord meets its obligations under this subsection.  Landlord, after receipt of notice from Tenant advising of such violation, shall commence an action (or arbitration, if required by such lease or license agreement) against such other tenant or occupant, and thereafter shall use diligent and good faith efforts to enforce its rights under such lease or license agreement and to obtain Judicial Relief and obtains the same within six (6) months following such notice from Tenant For purposes hereof, "Judicial Relief" shall mean a temporary restraining order, preliminary injunction, order of eviction, other court order, or order resulting from an arbitration proceeding enjoining the lease violation; provided, however, Landlord shall not be required to appeal any adverse decision denying Judicial Relief.

(d)     This Exclusive Use covenant shall cease and terminate and be of no further force or effect if the Premises shall cease to be used for the Exclusive Use for a period of ninety (90) days in the absence of a casualty or remodeling.  If the Exclusive Use granted to Tenant hereunder is found to violate any federal, state or local anti-trust law or other law, governmental rule or regulation, this Exclusive Use provision shall immediately become void and be of no further effect.  The provisions of this Paragraph 3 shall be of no force or effect during the last six (6) months of the Term, as the same may be extended pursuant to the Extension Option or otherwise.

## FIRST AMENDMENT TO LEASE

**This First Amendment to Lease** (this "First Amendment") is effective as of the 1st day of June, 2020 (the "Effective Date"), by and between **1065 Wisc LLC**, a Delaware limited liability company ("Landlord"), and **The CANDLE BAR STORES, LLC, a Tennessee limited liability company** ("Tenant").

## RECITALS:

WHEREAS, pursuant to that certain Lease Agreement dated January 7, 2019 as modified by the Rent Relief Letter Agreement and Deferred Rent Promissory Note dated April 15, 2020, Tenant leased the Premises known by street address 1065 Wisconsin Avenue, NW, Washington, DC 20007, (the "Leased Premises") and which encompasses 2,111 rentable square feet in the Leased Premises, and which Lease is hereafter modified or amended, the "Lease"; and

WHEREAS, Landlord and Tenant now desire to modify and amend the Lease in certain respects, including, without limitation, the terms for a temporary amount of rent and payment of rent under the Lease.

NOW THEREFORE Landlord and Tenant agree to the following modifications and amendment of the terms and conditions set forth in the Lease:

1.    The Landlord and Tenant agree that the Rent Relief Letter Agreement and Deferred Rent Promissory Note previously executed on April 15, 2020 is hereby null and void and replaced by the terms of this First Amendment to Lease.

2.    The Landlord and Tenant wish to confirm their agreement on a temporary abatement of the monthly rent for the months of June, 2020 through and including October of 2020.  This abatement is subject to Tenant's repayment of all monies owed for the periods of April, 2020 and May, 2020, which shall be due immediately upon Tenant's execution of this amendment.

| PERIOD COVERED | MONTHLY RENT |
|---|---|
| June 1, 2020 – June 30, 2020 | Greater of 50% of base rent ($3,333.33) or 10% of gross sales |
| July 1, 2020, - July 31, 2020 | Greater of 50% of base rent ($3,333.33) or 10% of gross sales |
| August 1, 2020 – August 31, 2020 (subject to lender approval) | Greater of 50% of base rent ($3,333.33) or 10% of gross sales |
| September 1, 2020 – September 30, 2020 (subject to lender approval) | Greater of 50% of base rent ($3,333.33) or 10% of gross sales |
| October 1, 2020 – October 31, 2020 (subject to lender approval) | Greater of 50% of base rent ($3,333.33) or 10% of gross sales |

3.    Tenant hereby agrees to submit to Landlord a report of its monthly gross sales as of the 15th of the month following the month in which the sales occur.  In the circumstance where there is additional rent due Tenant shall submit the additional rent by the 15th of the month following the month which the sales occur.

4.      Tenant shall continue to pay its current Monthly Common Area Maintenance, Insurance, and Tax Charges totaling $3,820.06 in addition to the monthly rent payments detailed above.

5.      Except as modified herein, the Lease shall remain unchanged, and all other terms and conditions of the Lease, as previously modified and amended and as further modified and amended hereby, shall remain in full force and effect through the remaining Term hereof.

6.      This First Amendment together with the Lease contain the entire agreement of the parties with respect to the matters contained herein or therein, and may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change or modification is sought.

7.      The Recitals set forth near the beginning of this First Amendment are incorporated herein by this reference.


IN WITNESS WHEREOF, the parties have caused this First Amendment to be duly executed and delivered this 3 0 th        day of  June        , 2020, but effective in all respects as of the Effective Date.


**LANDLORD:**                              **1065 WISC LLC, a Delaware limited liability company**

By _Adam D. Roffman_____
        Adam D. Roffman, Managing Member

Date: _June 30, 2020_____


**TENANT:**                                **The CANDLE BAR STORES, LLC**

By: _____ West_____
                    (signature)

Print Name: _Jinanne West_____

Its: _Vice President_____
            (title)

Date: _June 30, 2020_____

2